ALFRED L. WALKER & another *vs.* CHARLES M. RUSSELL.

Worcester. November 15, 1921. — February 28, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Broker,* Commission. *Contract,* What constitutes. *Agency. Sale. Evidence,* Of state of mind; Opinion: expert; Admission. *Practice, Civil,* New trial, Exceptions, Variance. *Words,* "Sale."

At the trial of an action by a real estate broker upon an account annexed claiming a commission "for procuring customer or purchaser for defendant's woodlot," there was evidence tending to show that, in an interview between the plaintiff and the defendant relating to the woodlot, the defendant stated to the plaintiff that his price was $7,500 and asked him what he "had for selling lots;" that the plaintiff replied, "Five per cent," and that the defendant said that, if the plaintiff would "find a customer for the lot he was willing to pay for the sale of it," that, if the plaintiff "sold the lot," he was to receive a commission of five per cent; that the plaintiff found a person who was willing to pay the defendant's price and who paid down $100 which was forwarded by the plaintiff to the defendant with a letter; that later, upon there being a delay on the part of the prospective purchaser, the defendant stated that he was willing to accept a further payment of $500 and the balance of the price one week later, the purchaser to pay interest and a year's taxes; that the purchaser agreed to this arrangement and was ready, willing and able to carry it out, but that later the defendant sold the property to another person. *Held,* that

(1) The evidence warranted findings that the sale was not consummated because of the defendant's fault and that the plaintiff was entitled to a commission;

(2) The earning of the commission was not contingent upon the plaintiff bringing about a completed sale, but upon his furnishing to the defendant a purchaser ready, willing and able to purchase on the terms named.

The words "sale" and "to make a sale," as used in agreements between real estate brokers and their principals as to commissions to be received by the brokers, ordinarily mean to negotiate a sale and to procure a purchaser.

The ordinary contract between a real estate broker and his principal providing for a commission upon a "sale" entitles the broker to the specified compensation whenever through his influence a prospective purchaser is produced, ready, willing and able to purchase on the principal's terms, although, by reason of fault or unwillingness of the principal, the sale never is consummated.

At the trial of the action above described, it appeared that the defendant and the

prospective purchaser had intended to make an agreement in writing as to the sale, but that afterwards the defendant repudiated his oral agreement. The defendant contended that the plaintiff was not entitled to a commission until the agreement in writing was made. *Held,* that this contention of the defendant was untenable.

Testimony of the prospective purchaser, at the trial of the action above described, that he was willing to carry out his oral agreement with the defendant, was admissible, his state of mind being a material issue.

It was not error, at the trial of the action above described, to admit in evidence testimony of the plaintiff, a real estate broker of experience, bearing on the value of his services as a broker.

The letter from the plaintiff to the defendant, enclosing the $100 paid by the prospective purchaser as an initial payment, was admissible at the trial of the action above described.

The exercise of his discretion by a trial judge in the denial of a motion for a new trial cannot be revised upon exceptions if no abuse of discretion appears.

The declaration in an action by a real estate broker was upon an account annexed claiming "Commission for procuring customer' or purchaser for defendant's woodlot, 5% on $8,375 — $418.75." There was evidence warranting a finding that the defendant was willing to pay the plaintiff a commission of five per cent for procuring a purchaser of the lot at $7,500; that the plaintiff had procured a prospective purchaser who was willing to pay the defendant's price, $7,500, for the lot; that some delay occurred, and that finally the parties orally agreed that the purchaser should pay, beside the price formerly named, interest and taxes which made the price amount in all to $8,375; that the purchaser was ready, willing and able to carry out the agreement, but that the defendant sold to another person; that a commission of five per cent was a fair compensation for the plaintiff's services. The jury found for the plaintiff in the sum of $375. Upon exceptions, to the denial of a motion for a new trial, it was *held,* that

(1) The jury were warranted in finding on a *quantum meruit* that the value of the plaintiff's services to the defendant was five per cent of $7,500;

(2) The verdict was not inconsistent with the evidence;

(3) There was no variance between the allegation and the proof.

A variance between the allegations of the declaration in an action and the proof at the trial cannot be taken advantage of for the first time on the hearing in this court of exceptions saved by the defendant at the trial.

CONTRACT by copartners doing business under the name and style, Walker and Whitton, with a declaration upon an account annexed of one item, described in the opinion. Writ in the District Court of Leominster dated July 7, 1920.

On appeal to the Superior Court, the action was tried before *Lummus,* J. In addition to his testimony in direct examination described in the opinion, the plaintiff testified as follows in cross-examination as to the conversation on the lot in May, 1917: Q. "That in substance, your talk was that if you sold it for him he (Russell) was willing to pay a commission?" A. "Yes." —

Q. "Five per cent, is that right?" A. "Yes." — Q. "That is just about what happened on that day? That is, I mean what happened between you and Russell without pinning you down to the precise conversation; your talk and his talk was that if you sold the lot, you would get a commission of five per cent. That is true is it?" A. "Yes." — Q. "But the talk was in substance, if you sold the property you were to get a commission of five per cent." A. "Yes." — Q. "That is what it was?" A. "Yes."

Other material evidence and exceptions saved by the defendant are described in the opinion. The jury found for the plaintiff in the sum of $375. Proceedings upon a motion by the defendant for a new trial, which was denied, are described in the opinion. The defendant alleged exceptions.

The case was submitted on briefs.

*C. F. Baker, E. W. Baker & S. M. Salny,* for the defendant.

*R. W. Robbins & G. M. Barrows,* for the plaintiffs.

CROSBY, J. This is an action to recover a commission on a sale of real estate. The contract having been oral, its terms are to be determined from the evidence. The plaintiffs' declaration is upon an account annexed, and charges "Commission for procuring customer or purchaser for defendant's woodlot, 5% on $8,375. — $418.75."

There was evidence that some time in 1917 the plaintiff Walker saw the defendant with reference to selling his (the defendant's) woodlot; that in May of the same year the defendant stated that his price was $7,500; that he asked Walker "what . . . [he] had for selling lots," and that Walker replied, "Five per cent." On direct examination, Walker testified that during the conversation the defendant said, "If I would find a customer for the lot he was willing to pay for the sale of it." The defendant testified that he stated to Walker his price was $7,500 net, and that he, Walker, would have to get his commission out of the purchaser.

There was evidence that Walker showed the lot to several persons, including one Howe, who agreed to buy it for $7,500, and on January 20, 1919, delivered to him a certified check for $100 in part payment; that Walker forwarded the check to the defendant who cashed it and obtained the proceeds; that between January 20, 1919, and June 3, 1920, the defendant saw the plaintiffs twice and talked with them respecting the sale to Howe;

that he asked when the latter was going to complete the bargain and on being told that Howe was not then ready, he expressed willingness to wait a while provided Howe would pay interest on the purchase price and taxes on the lot.

There was also evidence of two conversations by telephone between the plaintiffs and the defendant in the fall of 1919; that on June 3, 1920, Walker and Howe saw the defendant and told him that they were ready to pay $500 at that time on the purchase price and the balance on or before June 10; that the defendant finally agreed to that arrangement provided Howe would pay interest and a year's taxes, and with the further understanding that if he did not pay the balance as agreed the amounts paid should be forfeited to the defendant; that Howe consented to these terms and so stated to the defendant; that he was willing and ready at that time to pay $500 in cash but that the latter afterwards refused to accept it, declined to carry out the agreement, and sold the lot the next day to one Whitney.

If the jury believed the evidence offered by the plaintiffs, a finding was warranted that the sale was not consummated because of the defendant's fault and that the plaintiffs were entitled to a commission for procuring a customer who was able, ready and willing to purchase the property. The contention of the defendant that on the testimony of the plaintiff Walker a commission was not to be paid unless there was a completed sale cannot be sustained. The testimony of Walker that "If I [Walker] would find a customer for the lot he [Russell] was willing to pay for the sale of it" does not necessarily mean that an actual sale should be made as a condition precedent to the right of the plaintiffs to receive a commission. The words "to sell" or "to make a sale" as used by the parties in a transaction of this kind, mean that the defendant should be furnished by the plaintiff with a purchaser who is able, ready and willing to buy on the defendant's terms; at least the jury could so find. The word "sale" in this connection could be found to mean the furnishing to the defendant an opportunity to sell his property. If, as the plaintiff Walker testified, the defendant inquired of him what he received for selling lots, it was evidence that the defendant understood he would have to pay a commission if the plaintiff procured a purchaser and not that there was to be a completed sale to entitle

him to be paid. The words "sale" or "to make a sale," as used by brokers in contracts with their principals, in cases like the one at bar, ordinarily mean to negotiate a sale and to procure a purchaser; strictly speaking, a broker who is so employed cannot make a sale or sell real· estate because he is not vested with the legal title. A contract for a commission on a "sale" entitles the broker to the specified compensation whenever through his influence a prospective purchaser is produced, although the sale is never consummated because of the fault or unwillingness of the principal. *Rice* v. *Mayo,* 107 Mass. 550. In the following, and other cases where actions were brought by real estate brokers to recover commissions for the "sale" of property or "to make a sale," those words have been assumed to mean to procure a customer who was able, willing and ready to purchase on the terms of the owner. *Witherell* v. *Murphy,* 147 Mass. 417, 419. *Holden* v. *Starks,* 159 Mass. 503, 504. *Taylor* v. *Schofield,* 191 Mass. 1. *Brilliant* v. *Samelas,* 221 Mass. 302. *Edward T. Harrington Co.* v. *Waban Rose Conservatories,* 222 Mass. 372.

If the conversation between Walker and the defendant in May, 1917, as testified to by Walker, is to be taken as a correct recital of what they said, a completed oral contract was entered into by which the plaintiffs were to find a customer for the lot, the price being fixed at $7,500; and the defendant agreed to pay a commission of five per cent to the plaintiffs if they found such customer who was able, willing and ready to purchase on those terms. As nothing was said as to the terms of payment, the contract properly construed meant that it should be paid in cash. The evidence offered by the plaintiffs tended to show that that agreement was afterwards modified by the parties and that $100 was paid by the prospective purchaser on January 20, 1919, and that a further agreement was made on June 3, 1920, by which Howe was to pay $500 on that day and the balance seven days later.

While the presiding judge stated in his charge that there was no evidence of any contract except the talk between the parties early in 1917, he afterwards correctly stated to the jury that "According to the plaintiffs' contention and testimony the defendant had agreed to the terms that involved the payment of $500 down and a future payment of the balance in a certain time.

Those are the terms that the plaintiffs contend were agreed to by the defendant. If you do not find those terms were agreed to by the defendant then Howe was not a customer able and ready and willing to buy upon the defendant's terms no matter whether he had the money in his pocket or not."

The jury returned a verdict for the plaintiffs for $375, that being five per cent of $7,500, the price which the defendant agreed to sell for and without reference to how much he was to be paid as interest and taxes. It is manifest that the jury believed the plaintiffs were not entitled to recover a commission on the money paid as interest and taxes, even if they found that there was an agreement to pay a commission of five per cent; or they may have found there was no express agreement respecting the amount of the commission and that $375 was a fair and reasonable sum for the plaintiffs to recover for their services. The contention of the defendant that because the parties intended that a written agreement was to be drawn by an attorney, that he was not to become liable for a commission until that event had occurred is not tenable, not only because no written agreement was necessary to entitle the plaintiffs to a commission, but because the rational inference from the evidence is that the agreement contemplated by the parties was a written contract between the defendant and Howe, the prospective purchaser, which the defendant refused to enter into, although Howe was willing to do so. The right of the plaintiffs to receive a commission did not depend upon whether such written agreement was made or not, if they had produced a customer who was ready, able and willing to purchase on the defendant's terms; and he could not defeat the right of the plaintiffs to be paid by refusing to make a written agreement to sell, if there was evidence to show he had orally agreed to such sale.

The exception to the admission of the testimony of Howe that he was willing to buy the woodlot in June, 1920, cannot be sustained. It related to a material issue in the case and involved his state of mind to which he could testify. *Woodward* v. *Sullivan*, 152 Mass. 470. *Commonwealth* v. *Trefethen*, 157 Mass. 180, 188, 189. *Dunham* v. *Holmes*, 225 Mass. 68, 74, 75.

The plaintiff Walker was allowed to testify as to what was a fair and reasonable commission for selling a woodlot in Ashburn-

ham, subject to the defendant's exception. The judge could have found that he was qualified so to testify; if so, the evidence was competent and material as bearing upon the value of the plaintiffs' services, if the jury failed to find that five per cent of the purchase price had been agreed upon, as the plaintiffs contended. In the absence of such an agreement, the plaintiffs could recover the fair value of their services. A similar question was put to the plaintiff Whitton and answered, to which the defendant excepted. It was plainly admissible. He testified that he had been in the real estate business for over twelve years, in the selling and buying of woodlots. He was qualified to answer. The evidence was admissible to show the value of the plaintiffs' services if the jury found there was no express agreement to pay five per cent on the purchase price. .

The letter enclosing a check for $100 sent by the plaintiffs to the defendant on January 20, 1919, was properly admitted. Its receipt had a tendency to show that the defendant accepted Howe as a purchaser of the lot and that he had been procured as such purchaser by the plaintiffs.

The motion to direct a verdict for the defendant was rightly denied. It could not have been ruled that the plaintiffs could not recover upon all the evidence.

We have carefully examined the defendant's exceptions to the refusal of the trial judge to give his requests for instructions. It would serve no useful purpose to consider them in detail. We are satisfied that they were rightly refused. Nor can the exceptions to the charge be sustained. The trial judge seems to have accurately and fully stated the rules of law applicable to the issues of fact presented by the evidence.

After verdict, the defendant seasonably filed a motion for a new trial on the grounds that the verdict was against the law, against the evidence and the weight of it, and was inconsistent with any evidence in the case. At the hearing on the motion the defendant also filed a request for a ruling entitled "Defendant's request for ruling of law upon motion for new trial." The court denied the motion and refused to rule as requested and the defendant excepted on the ground "that the verdict was legally impossible on the evidence and the judge's charge, and therefore the refusal to order a new trial was an abuse of the judge's dis-

cretion, and that the refusal of the court to grant the request of the defendant at the hearing on motion for a new trial was erroneous as a matter of law."

The exercise of his discretion by a trial judge on the denial of a motion for a new trial cannot be, revised upon exceptions if no abuse of discretion appears. There is nothing in this record to indicate that the discretion of the court was improperly exercised. *Rowse, petitioner,* 195 Mass. 216, 220, and cases cited. *Davis v. Boston Elevated Railway,* 235 Mass. 482, 496, 497.

We are unable to discover any ground upon which it can be contended that the verdict was inconsistent with the evidence or that it was legally impossible on the evidence and the judge's charge. *Commonwealth* v. *Haskins,* 128 Mass. 60. *Lufkin* v. *Hitchcock,* 194 Mass. 231, 233, 236. If the jury found, as they properly could have done on all the evidence, that the commission should be computed solely on the selling price of $7,500, or if they found that there was no express agreement as to the commission to be paid, the plaintiffs could recover on a *quantum meruit. Munroe* v. *Taylor,* 191 Mass. 483. *Chandler* v. *Baker,* 191 Mass. 579, 583, 584. Upon either of these views which the jury could have taken on the evidence the verdict for $375 was not inconsistent therewith or with the judge's charge.

We find nothing in the charge, so far as it is set forth in the record, in which the judge stated as alleged in the request for ruling made at the hearing on the motion for a new trial that "the only question that they should consider was whether, upon the evidence, the plaintiffs were entitled to recover a commission of five per cent on account of a sale or agreement for sale for the sum of $8,375 upon which said commission would be $428.75." Nor is such an instruction to be inferred from those given. There is nothing in the charge which precluded the jury from returning a verdict for the plaintiffs for $375. The exceptions to the refusal to grant the motion and the refusal to make the ruling requested must be overruled.

We find no variance between the allegations and the proof. If there were such variance, as it was not claimed at the trial it cannot now be raised in this court for the first time. *Smith* v. *Colby,* 136 Mass. 562. As no error of law is shown, the entry must be.

*Exceptions overruled.*