FRANK W. CHAMBERLAIN, JR., *vs.* NEW ENGLAND DRESSED MEAT & WOOL COMPANY.

Middlesex. March 14, 1932. — June 27, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Broker,* Commission.

Evidence, at the trial of an action by a real estate broker against a corporation for a commission for procuring a customer to buy certain property upon which the defendant held a mortgage, was in substance that, at the request of the credit manager of the defendant, the plaintiff sought a customer and submitted certain offers to the credit manager which were not acceptable to him; that later an employee of the plaintiff procured a signed offer of purchase from a customer, who agreed to sign the usual purchase and sales agreement with the owner "on acceptance," made a deposit with the offer and was able to pay the amount offered; that the signed offer was taken to the credit manager, who looked at it and said it was the best so far received, tried to call some one on the telephone and then signed for the plaintiff a receipt stating that he had "received from" the plaintiff the deposit "received from" the customer. In cross-examination, the plaintiff stated that he "wanted" the credit manager to sign the usual agreement but he would not, and that the agreement and deposit were left with him "with the understanding that they were to be returned the following Monday if he was going to sign them." The customer's offer never was accepted, nor was the agreement signed. The property was sold to an employee of the defendant who dealt with another

officer of the defendant than the credit manager. There was no evidence of bad faith. A verdict was ordered for the defendant. Assuming that the credit manager had authority to act for the defendant in the circumstances, it was *held*, that

(1) All that the plaintiff obtained was an offer which was to be submitted to the owner of the property, was not to be binding until accepted by that owner, never was submitted to the owner, and never was accepted by the defendant's representative;

(2) The verdict rightly was ordered.

CONTRACT. Writ in the Third District Court of Eastern Middlesex dated March 27, 1931.

On removal to the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged an exception.

*A. W. Wunderly*, for the plaintiff.

*J. Wise*, for the defendant.

WAIT, J. This is an action at law brought by a real estate broker to recover a commission for obtaining a customer ready, able and willing, as he alleges, to purchase certain real estate at a price and upon terms acceptable to the defendant. At the trial to a jury the presiding judge, at the close of the plaintiff's case, directed a verdict for the defendant. The case is before us upon the plaintiff's exception to the order directing the verdict.

The evidence, put most strongly for the plaintiff, in substance, was as follows: The defendant is a corporation engaged in selling meat and wool at wholesale. It owned a mortgage on real estate of a Mrs. Craft, which it held as security for a debt due to it. It desired to have this realty sold so that it might obtain the $4,575.36 which was due. One Brock, its credit manager, in whose name the mortgage stood, telephoned to the plaintiff that the corporation wanted to dispose of the property; asked what he thought it was worth; said that "they were willing to listen to any kind of an offer within reason"; and asked him to do his utmost to procure a customer. The plaintiff told Brock he thought he could get about $7,000 for the property; and Brock, in reply, said if "the defendant had to sell [it] at that price, they would sell it to some person in their

employ." About a week later the plaintiff telephoned to Brock that he had a customer he thought he could interest in the property at around $7,500. In reply Brock said that his coemployee would pay $7,200. The plaintiff thereupon said: "If I sold the house for $7,500 and took $200 as a commission, netting you $7,300, would that be perfectly all right?" and Brock answered that it would. Later, after Brock had denied so stating, the plaintiff testified that Brock had said: "That would be fine." The plaintiff also testified that Brock told him there was a coöperative bank mortgage for $4,800 on the premises and he wanted cash above that; and in cross-examination that Brock told him: "I will let you know . . . if there is any change as far as their employee is concerned." He asserted this was all that was said between them at that time; and that he did not hear from Brock again after March 19, 1931, until March 21. On March 21, an employee of the plaintiff showed the property to a Mrs. Upton, and obtained her signature to an offer to the plaintiff of $7,700 for the premises to be paid, $2,900 in cash and $4,800 "in a 1st mortgage existing at 6%." This was accompanied with $25 "to bind this offer" and "to be returned to me if this offer is not accepted by the owner on or before 12 noon on Mar. 23, 1931." It concluded: "On acceptance, I agree to sign your usual purchase and sales agreement with the owner, and make an additional deposit of $475 00/100." This agreement signed by Mrs. Upton he took that evening to the home of Brock; gave him the agreement and told him that the house had been sold for him. Brock looked at it, and said it was the best offer they had so far received. Later he gave Brock the $25 and took a receipt signed by Brock which read: "Mar. 21, 1931 RECEIVED from F. W. Chamberlain, Jr. Twenty-five dollars Deposit received from Mrs. Upton On acct. of sale of house at 44 Gloucester Street, Arlington, Mass. $............... (signed) E. M. Brock." On cross-examination, he testified that Brock tried to call up somebody, before he gave the receipt, but said he could not get in touch with the person he wanted. He was not

sure whether Brock told him he thought the house had been sold to an employee. He wanted Brock to sign the agreements but Brock would not, and the witness left them with the $25 "with the understanding that they were to be returned the following Monday [March 23] if he was going to sign them." Mrs. Upton was abundantly able to pay the $7,700 in cash. The agreements were not signed by any one as owner.

There was uncontradicted evidence that on March 21 Mrs. Craft was owner subject to the mortgage. On March 21 an employee of the defendant, one Tolin, bought the property, dealing with one Irish, the defendant's general manager, the person whom Brock had tried to reach on the telephone. On April 1, Mrs. Craft deeded to Brock; and on the same day Brock deeded to Tolin.

The principles of law here controlling are stated with ample citation of authority in *Elliott* v. *Kazajian*, 255 Mass. 459. They need not be restated. An offer was made to the plaintiff. It never ripened into a contract. All that the plaintiff obtained was an offer to himself to be submitted to the owner of the property, not to be binding until accepted by that owner. It was never submitted to Mrs. Craft, and it was never accepted by Brock. If all the evidence offered before the close of the plaintiff's case be accepted as true, the defendant through its general manager sold the property to Tolin before it knew of Mrs. Upton's offer. It had a right to do so; and a sale was a revocation of the offer to the plaintiff. See cases collected in *Elliott* v. *Kazajian*, 255 Mass. 459, at pages 461, 462; *Des Rivieres* v. *Sullivan*, 247 Mass. 443. No bad faith appears. Cases like *O'Connell* v. *Casey*, 206 Mass. 520, have no application. If the evidence with regard to Tolin be disregarded, still no liability is made out. Securing an offer conditioned on acceptance by the owner, and never accepted by any one, does not constitute performance by the broker of the terms of the offer made to him by the defendant. Serious difficulty exists in finding evidence of authority in Brock to bind the defendant both in making the offer to the plaintiff and in dealing with the offer of

Mrs. Upton. We do not consider this point, because the trial judge seems, from the bill of exceptions, to have given counsel to understand that he regarded the evidence of Brock's authority to be sufficient to have entitled the plaintiff to go to the jury on that question. He ruled, and rightly, that the evidence, on other grounds, was insufficient to sustain a verdict for the plaintiff, even if Brock were authorized to bind the defendant. The essential point is that the plaintiff failed to show a performance by himself of the terms of the offer sufficient to transform the offer into a binding contract.

*Exception overruled.*