PALMER RUSSELL COMPANY *vs.* ZUCIO A. ROTHENBERG, trustee.

Suffolk. January 7, 1952. — March 4, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Broker,* Commission. *Evidence,* Relevancy and materiality, Corroborative evidence, Competency. *Practice, Civil,* Requests, rulings and instructions.

Evidence warranted a finding that a broker hired by an owner of real estate became entitled to a commission in an agreed amount by procuring a customer ready, able and willing to purchase the property on the owner's terms and by apprising the owner thereof; the jury were not required to believe evidence that before the owner was so

apprised he had entered into an agreement to sell a one-half interest in the property to other parties, and a conveyance of such interest by him to them after he was so apprised was too late to affect the broker's right to the commission.

At the trial of an action by a real estate broker for a commission for procuring a customer ready, able and willing to purchase property of the defendant, a deposit check in a substantial amount given to the broker by the customer and shown to the defendant, and testimony by the customer that a purchase money mortgage on certain terms "was . . . agreeable to" him, were admissible.

A question to a witness as to what another person "understood" concerning a certain matter was properly excluded.

There was no error in the exclusion of certain evidence to show a fact not disputed.

Testimony by a witness in rebuttal that "he had some means of refreshing his recollection . . . [concerning certain material] dates by memorandum reports to his employers" was admissible in the discretion of the judge.

A trial judge is not required to give correct requests for instructions in their exact language if he covers them substantially in the charge.

CONTRACT. Writ in the Superior Court dated February 25, 1948.

The action was tried before *Hurley*, J.

*I. Bernstein*, for the defendant.

*W. H. McLaughlin*, for the plaintiff.

WILLIAMS, J. In this action by a real estate broker for a commission, there was a verdict for the plaintiff. Exceptions were taken by the defendant to the admission and exclusion of evidence, to the denial of his motion for a directed verdict, and to the refusal of the judge to give certain requested instructions to the jury. The evidence in its aspect most favorable to the plaintiff was substantially as follows. The defendant, as sole trustee of the L. S. M. Trust, owned a block of stores at 1703–1711 Beacon Street, Brookline. In the summer of 1947 one McMullen, who was employed by the plaintiff in its real estate business as a broker, interviewed the defendant and asked him if he was interested in selling the stores. The defendant "indicated [that] he was and that at a later date he might give the details of the property such as the lease information completely for possible sale." McMullen saw the defendant again on February 10, 1948, at which time the defendant said that "such

sale would be satisfactory" and gave McMullen all the information pertaining to the income and expenses of the property. The defendant said "that in selling the property at $70,000 he wanted to receive all cash above the first mortgage of approximately $34,350." McMullen "figured out" for the defendant that the commission for the sale would be $2,500. The broker thereafter showed the property to one Arthur T. Nelson and received from him his check in the sum of $2,000 dated February 19 and payable to the plaintiff. On the back of the check it was stated, "Deposit to be applied on purchase price of property at 1703–1711 Beacon Street Brookline." McMullen saw the defendant later on February 19 and asked him if he would sell the property for less than $70,000. The defendant said, "No, . . . If I don't get $70,000 I am taking the property off the market." After some talk the defendant said that he "would take back a second mortgage of $15,000 at 5% interest, payable in or within one year." McMullen thereupon called Nelson on the telephone from the defendant's office and submitted to Nelson the proposal of the defendant. At the conclusion of his talk with Nelson he told the defendant "that the buyer, Arthur T. Nelson, would accept his terms cn the second mortgage at 5% interest; and that the deal was closed." He passed Nelson's check to the defendant who refused to take it, saying, "I want to talk with my partners . . . [and] will be in touch with you in a day or two about this whole matter." McMullen said that "there was no consulting necessary; that the transaction had been completed and they had brought a customer ready, willing and able to purchase the property." The defendant replied, "I will be in touch with you within a few days," and terminated the interview. McMullen talked with the defendant again the same afternoon. The latter said that he had nothing further to say to him and that he (McMullen) would have to talk with his attorney. When the check was passed to the defendant it had not been indorsed by the plaintiff and McMullen testified that it was "normal procedure in the real estate business that upon receipt of a de-

posit and a satisfactory offer to pass the check over as evidence of good faith, the deposit to be indorsed when the agreement is signed. He had in mind that there was to be an agreement signed in this case between Arthur T. Nelson and Dr. Rothenberg and that the agreement was to embody all the terms of these two people as to the purchase and sale of the property, and until the agreement was actually made out and signed by the parties this check was not going to be indorsed and not actually to be given to Dr. Rothenberg for his purposes." While McMullen was telephoning to Nelson the defendant asked one Lane, a broker who had accompanied McMullen to the defendant's office, "how good would the signature on the second mortgage be." Lane replied that "he had done business with Arthur Nelson for a long time, had sold him many properties, his signature was absolutely good, and he was rated in the classification of millionaires." The defendant said, "Fine, as long as I [can] get a good signature on the note." The purchaser, Nelson, testified that he had examined the premises; that he was financially able to take them over; and that he was prepared to purchase at the asking price of $70,000 with a second mortgage of $15,000 at 5%.

There was evidence introduced by the defendant that he was the sole trustee of L. S. M. Trust and had the sole control and management of the property; that he was interested in another real estate trust, the Hammond Trust, with Jacob and Ann Furman who were the trustees; that he saw McMullen on February 6 rather than on February 10; that he then told McMullen that he would pay a commission of $2,500 on condition that the property was sold for $70,000 and the papers passed; and that he was about to sell the property to other parties. There was further evidence that on February 9 he executed a written agreement with the Furmans as trustees of the Hammond Trust to sell them a one-half interest in the property "on the basis of" $65,000, the deed to be delivered on March 1, that on February 24 he executed a deed of a one-half interest in the property to the Furmans as trustees of the

Hammond Trust, and that on the same date the deed was recorded.

The case was properly submitted to the jury. There was evidence that the defendant offered the property for sale through McMullen on terms specifically stated without imposing any condition that the commission for the sale was to be paid only upon the execution of a formal written agreement between the seller and the purchaser, and that McMullen secured a customer ready, able and willing to purchase the property on those terms. In accordance with well settled principles McMullen would, if these facts were found, be entitled as agent for the plaintiff to be paid the agreed upon commission. See *Fitzpatrick* v. *Gilson*, 176 Mass. 477; *Walker* v. *Russell*, 240 Mass. 386; *Buono* v. *Cody*, 251 Mass. 286; *Ripley* v. *Taft*, 253 Mass. 490; *Elliott* v. *Kazajian*, 255 Mass. 459. It could be found that McMullen was not told of the execution of any written agreement with the Furmans and that the only reason advanced by the defendant for not accepting the purchaser produced by McMullen was that he wished to confer with the Furmans. It appeared that the defendant was advised of the financial responsibility of the purchaser and was shown a check drawn in a substantial amount which had been deposited with the broker as evidence of good faith, and that he did not question the ability of the prospective buyer to complete the purchase. See *Whitkin* v. *Markarian*, 238 Mass. 334, 336.

It was for the jury to say whether the alleged agreement of February 9 had been executed before the interview of McMullen with the defendant on February 19. The subsequent conveyance on February 24 was too late to effect a revocation of the defendant's offer and to deprive McMullen of his right to a commission. See *Des Rivieres* v. *Sullivan*, 247 Mass. 443, 448; *Elliott* v. *Kazajian*, 255 Mass. 459, 461–462; *Chamberlain* v. *New England Dressed Meat & Wool Co.* 279 Mass. 462.

The defendant excepted to the admission of the check

which was presented by McMullen to the defendant. It was clearly admissible as a part of the performance by McMullen in producing an able and willing purchaser and was evidence to prove the purchaser's good faith. A question to Nelson as to what McMullen "understood" in reference to the check was properly excluded as calling for an answer relating to McMullen's understanding. An exception was saved to a question by the plaintiff to Nelson, "if you assumed the mortgage which was involved in this transaction was a $15,000 mortgage at 5% payable in or within one year, was that agreeable to you on consummating the purchase?" The witness answered, "Yes." It was clearly admissible as showing Nelson's willingness to purchase on the stipulated terms. There were several exceptions to the exclusion of the income records of the Hammond Trust and the L. S. M. Trust for the months of March and April, 1948. They were offered by the defendant apparently to prove the genuineness of the conveyance by showing that, after the conveyance of the property to the Hammond Trust, the L. S. M. Trust had a smaller income and that the Hammond Trust had a larger income. There seems to have been no question that the property was conveyed by deed on February 24, and there was no error in excluding the income records.

A photostatic copy "of the recording of the trust called L. S. M. Trust" was properly excluded. No offer of proof was made to show its materiality. After the defendant had testified that he saw McMullen on February 6 rather than on February 10, McMullen was called as a witness in rebuttal and testified that "he had some means of refreshing his recollection on those dates by memorandum reports to his employers." This testimony to which there was an exception was admissible "within the rule that a trial judge may in his discretion allow a witness to testify to facts and circumstances corroborative of his testimony." *Commonwealth* v. *Galvin*, 310 Mass. 733, 747. There was no error in the refusal to give the instructions to the jury which were requested by the defendant. While we think they were

substantially correct as statements of law, the judge was not required to give them in the exact language requested (see *Squires* v. *Fraska,* 301 Mass. 474, 476), and it appears that he covered them substantially in his charge.

*Exceptions overruled.*