ADOLPHE O. RICHARDS & another *vs.* WILLIAM J. GILBERT
& another.

Barnstable. December 3, 1957. — January 8, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Broker,* Commission. *Contract,* With broker. *Practice, Civil,* Requests,
rulings and instructions.

A judge sitting without a jury should not deny requests for rulings "as
not being in accord with the facts found" where he makes no findings
of facts. [618]

A broker with whom an owner of property listed it for sale at a desired
price earned his commission when he procured a customer who entered
into a written agreement, prepared by the customer's attorney, with
the owner to purchase the property at that price and paid a deposit
under a paragraph of the agreement providing that "a brokers com-
mission of . . . [a specified amount] is to be paid to . . . [the broker]
by the seller. Pending final passing of papers said deposit shall be
held in escrow by . . . [the broker]," although the broker "felt under
some sort of obligation" to help the customer "get the money" and
the customer at the time for passing papers was unable financially to
complete the purchase and forfeited his deposit, part of which the
broker had permitted the customer's attorney to hold. [619–620]

CONTRACT. Writ in the Superior Court dated August 24,
1955.

The action was heard by *Beaudreau, J.*

*John J. Ryan,* for the defendants.

*Daniel J. Fern,* (*Kenneth E. Wilson* with him,) for the
plaintiffs.

WHITTEMORE, J. These are the defendants' exceptions to
the denial by the trial judge of the defendants' requests for
rulings in connection with the judge's finding that the plain-
tiffs are entitled to recover from the defendants, who are
real estate brokers, the sum of $4,500, which the defendants
claimed as an earned commission, and interest.

The bill of exceptions shows in part as follows: The
plaintiffs entered into a written contract dated May 14,
1955, to sell to one Cook, for $47,500, capital stock of a

corporation the principal asset of which was real estate.
The agreement was in form similar to forms used for the sale
of real estate.    Cook had been introduced by one of the
defendants with whom the plaintiffs had "listed the property
for sale."    Cook paid a deposit of $4,750, and this was paid
to the defendants under a paragraph of the agreement
reading, "It is understood and agreed that a brokers com-
mission of $4,500 is to be paid to . . . [the defendants] by
the seller.    Pending final passing of papers said deposit
shall be held in escrow by . . . [the defendants]."

Cook, on June 15, 1955, the performance date, was unable
to produce the required balance due and had at all times been
uncertain whether he could do so although the plaintiffs
did not have doubts when the agreement was signed.    On
June 15 Cook and the plaintiffs sent the defendants a letter
stating Cook's acknowledgment of his financial inability
to complete, and the plaintiffs' offer to comply, and request-
ing the defendants to release the escrowed funds to the
plaintiffs.    The defendants paid the plaintiffs $250 and
retained $4,500.

The requests for rulings were denied "as not being in
accord with the facts found."    There being no findings of
fact, this was not a correct way of disposing of the requests.
*Mericantante* v. *Boston & Maine Railroad*, 291 Mass. 261,
263.    But the implications of the evidence stated in the bill
of exceptions suggest what the judge had in mind.    See
*Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 93; *Common-
wealth* v. *Hull*, 296 Mass. 327, 337; *Orcutt* v. *Signouin*,
302 Mass. 373, 375.    The issue presented is, we take it,
whether the trial judge could reasonably have concluded
that the thing specified to be done in the implied offer of
the owners to the brokers was to get the owners the purchase
price, or was only to find a buyer who would sign a binding
contract.    See *John T. Burns & Sons Inc.* v. *Hands*, 283
Mass. 420, 422.    The requests included the general one
that "On all the evidence the plaintiffs are not entitled to
recover."    Some of them stated law applicable to a listing
with "the understanding . . . that the plaintiff should

effect a sale." *Menton* v. *Melvin,* 330 Mass. 355, 357. In such a case it is settled that the broker becomes entitled to his commission when the owner executes a binding contract, that by such execution the seller accepts the buyer as ready, able, and willing to purchase on the terms stated, and that the broker's rights are not affected by the actual inability of the buyer to perform or the return of the deposit, *ibid.,* pages 356–357, and cases cited.

The bill states possibly relevant evidence, additional to that stated above, as follows: One of the plaintiffs testified that they "listed the property for sale . . . and set the price they were desirous of obtaining, namely, $47,500." One of the defendants testified that one of the plaintiffs "listed the property with their office for sale and asked [the] defendants to find a buyer at a selling price of $47,500." The other defendant "testified that the listing was given to them and that it was their business to find a buyer." The agreement of sale was drawn by an attorney who happened to be in the defendants' office when Cook walked in. The defendants introduced the attorney to Cook and he asked the attorney to take care of the details of the proposed transfer for him. The attorney felt "when he prepared the agreement, it was his duty to see that all parties connected were protected." One of the defendants took Cook to the local bank "in order to assist in the completion of the transaction" and "felt under some sort of obligation to help the purchaser get the money."

There is nothing in these facts to support a finding that the offer to the brokers was to pay them a commission only if they obtained the purchase price. See *Staula* v. *Carrol,* 312 Mass. 693; *Spritz* v. *Brockton Savings Bank,* 305 Mass. 170; *E. A. Strout Realty Agency, Inc.* v. *Gargan,* 328 Mass. 524, 527. The fact that one defendant felt under some sort of obligation to help Cook "get the money" did not show that the performance of whatever the obligation was which he felt was a condition of earning the commission. The escrow stated in the agreement between sellers and buyer was manifestly for the protection of the buyer in the

event the sellers were unable to give good title. Even though the brokers had earned their commission upon the signing of the contract, they were not then entitled to retain the buyer's deposit as the commission. So far as appears the attorney had no instructions from the defendants to reflect their right to a commission in the agreement, so that they would be bound by a suggestion in the agreement that the right to a commission was conditioned on the passing of papers. The statement of the right to a commission is unqualified. The testimony of one defendant that "If the transaction had been consummated, his commission would be $4,500" is not evidence that he thought he was entitled to a commission only in the event of consummation. It does not negative the implication of the fact of listing that the defendants would earn a commission earlier. It is some evidence of the amount of the commission for the services actually rendered.

We see nothing to distinguish the case from the ordinary one in which the commission is earned when the customer is found who is ready, able, and willing to buy, as shown by the binding agreement. *Frankina* v. *Salpietro*, 269 Mass. 292. *Stone* v. *Melbourne*, 326 Mass. 372. *Menton* v. *Melvin*, 330 Mass. 355. *McKallagat* v. *LaCognata*, 335 Mass. 376. The parties affirmed the agreement, recognized the sellers' rights under it, and the buyer's forfeiture of his deposit. See *Macurdy* v. *Carver*, 328 Mass. 434, 435, and cases cited.

The evidence that the brokers in violation of the escrow let the buyer's attorney, who drew the papers, hold part of the escrow fund does not defeat the brokers' right to a commission. This wrong action was a breach of an independent obligation and the plaintiffs have not been damaged.

The defendants' answer that their commission "was paid them from the deposit" is not sustained on the evidence, but the case has been dealt with as though recoupment had been duly pleaded and we so dispose of it.

*Exceptions sustained.*
*Judgment to be entered for*
*the defendants.*