FRANK M. SNOWDEN *vs.* VIRGINIA S. CHELTENHAM.

Suffolk. January 6, 1958. — April 8, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Broker*, Commission.

A real estate broker employed by a landowner, then resident in a distant city, to procure a purchaser of her land might properly be found to have earned a commission on evidence that the owner, upon being advised by the broker of an offer for the land, replied that she would accept it and instructed the broker to draw a contract, that he immediately notified her that a deposit had been received and that the sale and purchase contract had been mailed to her, and that she received and signed the contract and so informed the broker, but that she then accepted a better offer and the sale to the broker's customer was not consummated.

CONTRACT. Writ in the Superior Court dated February 12, 1954.

The action was tried before *Dowd*, J.

*Joseph S. Mitchell*, for the defendant.

*Samuel Susser*, for the plaintiff.

RONAN, J. This is an exception to the refusal of the judge to direct a verdict for the defendant in an action of contract brought by a broker to recover a commission for procuring a customer ready, able, and willing to buy the defendant's real estate.

There was evidence that in the summer of 1953, she informed the plaintiff that she was contemplating the sale of her dwelling house property in Boston. Nothing came of this interview and during the following September the defendant left Boston and took up her residence in Los Angeles, California. In January, 1954, she wrote the plaintiff inquiring if it would be possible for him to dispose of her property and later furnished him with certain information that he requested. The plaintiff sent her a telegram on February 3, 1954, that he had a definite cash offer of $36,000 for the property. On the next day he received the reply: "Will accept offer. Draw agreement." The plaintiff on February 4, 1954, sent another telegram that the offer had been accepted, that a deposit had been received, and that the agreement was en route by air mail special delivery. The plaintiff sent two copies of the buy and sell agreement by air mail. A third copy which had been executed by one Lynch was retained by the plaintiff together with a certified check for $500 paid as a deposit. After waiting a few days he telephoned the defendant as to the whereabouts of the agreements he had mailed to her. She told him that she had signed them and sent them to her attorney, whom she named, and that he could get them there. When the plaintiff inquired of the attorney he was informed that the mail had not been opened and in reply to subsequent inquiries received equally vague answers. He again telephoned the defendant who then told the plaintiff that she had accepted a better offer. At the trial of the instant case she denied that she had signed the agreements which the plaintiff had sent her. She did not produce these agreements and stated they were lost or mislaid. Since she had neglected to admit or deny whether she had signed these agreements when called upon to do so in a demand to admit facts filed under G. L. (Ter. Ed.) c. 231, § 69, as appearing in St. 1946, c. 450, she was bound by her failure and she should not have been permitted at the trial to deny that she executed them.

The jury could find that the plaintiff was employed to

procure a customer ready, able, and willing to purchase the defendant's property upon terms satisfactory to her (see *McKallagat* v. *LaCognata*, 335 Mass. 376; *Richards* v. *Gilbert*, 336 Mass. 617); and that after reading the full and complete agreements sent to her for execution and so becoming possessed of all the details of the sale she assented to the same by signing the agreements and so informing the plaintiff. The record does not disclose when she agreed to sell to one Weeks, the ultimate purchaser, but a jury could infer that it was after February 4, 1954, when she sent a telegram to the plaintiff accepting his offer and instructing him to draw agreements and also learning from the plaintiff that the purchaser made a deposit and that agreements were in the mail for her signature. They could also infer that it must have been after February 8, 1954, or thereabouts when she received the agreements. Her attorney was silent as to whether she ever sent the agreements to him and, if she did, whether they were signed by her. The jury could find upon all the evidence that they were executed by her and could infer that she selected a Boston attorney to represent her, as she was in California, and to care for the details involved in passing papers. She could not deprive the plaintiff of a commission after she informed him that she had assented to the agreements, and this would be true even if his customer might not, because of the statute of frauds or some other defence, be able to prevail against her in an action at law for damages or on a bill in equity for specific performance. *Johnson* v. *Holland*, 211 Mass. 363. *Stone* v. *Melbourne*, 326 Mass. 372. *Menton* v. *Melvin*, 330 Mass. 355. *McKallagat* v. *LaCognata*, 335 Mass. 376.

The failure of the defendant to sell to Lynch, the plaintiff's customer, because she had obtained a better offer from Weeks, did not permit her to shift the ground and now attempt to show that Lynch was not able, ready, and willing to buy. *Whitkin* v. *Markarian*, 238 Mass. 334, 336–337. *Frankina* v. *Salpietro*, 269 Mass. 292, 295. *Stern* v. *Old Colony Trust Co.* 276 Mass. 456. *Lieberman* v. *Cohn*,

288 Mass. 327. *Westlund* v. *Smith*, 291 Mass. 96, 99. *Seigel* v. *Cambridge-Wendell Realty Co.* 323 Mass. 598. *Palmer Russell Co.* v. *Rothenberg*, 328 Mass. 477, 481.

*Exceptions overruled.*