## Southern Division
## NORMAN M. PARKHILL
### v.
## ARMANDO P. DENARO

*Present*: Nash, P. J., Owen & Murphy, JJ.

Case tried to *DiVito, J.* in the District Court of Western Norfolk. No. 22999.

*Murphy, J.* This is an action of contract in which the plaintiff, a real estate broker, alleges the defendant owes him the sum of $800.00 for a commission due on the sale of

real estate arranged and negotiated by the plaintiff. The answer is a general denial.

The trial court found for the defendant.

The report in this case is entitled "Draft Report". Once settled by the judge, a draft report becomes the "Report". Rule 28 of the Rules of the District Court (1952).

*At the trial there was evidence tending to show that* the plaintiff, a real estate broker, was authorized by the defendant to obtain a buyer for property at 79 Cross Street, Foxborough, Massachusetts; that he did obtain a buyer, one Gerald R. Rodman, and subsequently an agreement in standard form was executed by the defendant and the buyer on May 24, 1963.

The clause relative to the broker's commission in the agreement reads as follows: "It is understood that a broker's commission of $800.00 on the said sale is to be paid to Norman M. Parkhill by the said party of the first part."

In addition to the other standard clauses, the agreement provided: "This agreement is subject to the condition precedent that the Buyer obtain a Savings Bank mortgage in the principal sum of $21,000 at $5\frac{1}{2}\%$ interest for 20 years. In the event said mortgage is not obtained by the Buyer then the deposit is to be returned and this agreement cancelled."

A copy of the Agreement is annexed to the report.

*There was evidence that* the fair and reasonable value of the plaintiff's services was

$800.00, and that the plaintiff had demanded but had not received his commission. The purchaser stated he had obtained a mortgage of $21,000.00 at $5\frac{1}{2}\%$ for 20 years from the Walpole Co-operative Bank and was ready, willing, and able to purchase, and the bank had granted the loan.

The defendant's wife did not sign the agreement, and there was an attachment on the property prior to the closing date.

The trial judge made special findings as follows:

"I find that the actual completed sale was a condition precedent to the broker earning his commission. I find the agreement, among other things, provided for its invalidation in the event the buyer was unable to obtain a 'savings bank mortgage'. I find that the buyer was not only obligated to 'apply' but also to 'obtain' the said mortgage.

"I find that the plaintiff has also not sustained the burden of proof that the plaintiff had produced a buyer who was ready, willing, and able to buy. I find that the buyer was ready and willing, but there is insufficient proof that he was 'able'. The only evidence I find that the buyer was attempting to make himself 'able' was an application for a mortgage loan at the Walpole Co-operative Bank; that the application was approved by the bank officials on June 13, 1963, but the treasurer of said bank testified, and I so find, that the bank

would not have completed the loan if they had knowledge of an attachment on the property. I find the agreement provided that the premises be conveyed on or before June 14, 1963; that the attachment was recorded on May 29, 1963 and was still a matter of record at time of the trial.

"The agreement (a standard form) to buy and sell which was signed by the seller only, and not his wife, among other things provided that:

'This agreement is subject to the condition precedent that the buyer obtain a Savings Bank mortgage in the principal sum of $21,000 at 5½% interest for 20 years. In the event said mortgage is not obtained by the Buyer then the deposit is to be returned and this agreement cancelled.'

"The agreement also provided: 'Said premises are to be conveyed on or before June fourteenth, 1963 by a good and sufficient quitclaim deed of the party of the first part, conveying a good and clear title to the same, free from all *incumbrances.'*

"The agreement further provided: 'If the party of the first part shall be unable to give title or to make conveyance as above stipulated, any payment made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease, but the acceptance of a deed and possession by the party of the second part shall be deemed to be a full performance

and discharge hereof except as those representations and warranties that are to survive the date of passing title.'

"I find that the name of the defendant's wife, Pauline Denaro, was typed in the appropriate place, but was struck out by drawing a line through it in the within mentioned agreement; that the agreement was not signed by her, in which she would agree, 'to join in the deed to be made as aforesaid, and to release to the party of the second part all right of dower and homestead in the said premises.' I find that under these conditions the wife could not be compelled to convey her dower right, and there was no evidence that she would sign a deed with her husband.

"The court is of the opinion that the plaintiff who stated he had the agreement prepared, had it signed by the prospective buyer in the presence of the buyer's attorney, then brought it to the defendant and obtained his signature, should have also completed his obligation, to assure a valid and binding agreement, by obtaining the signature of the defendant's wife.

"Further the court finds that there was no evidence of bad faith on the part of the defendant."

The plaintiff made the following requests for rulings:

"1. The facts warrant a finding for the plaintiff.

2. The facts do not warrant a finding for the defendant.

3. Plaintiff broker is entitled to a commission from the seller if he procures a buyer who is ready, willing and able to buy on the terms established by the seller. *Mather v. Haycock*, 391 Mass. 594, 595.

4. The defendant by entering into a binding agreement to sell his property to Gerald R. Rodman accepted Rodman as a purchaser, ready, able and willing to purchase on the terms therein stated. *Menton v. Melvin*, 330 Mass. 355, 356.

5. Plaintiff earned his commission when he produced a customer whom defendant accepted by entering into a purchase and sale agreement with the purchaser produced by the plaintiff. *Richards v. Gilbert*, 336 Mass. 617; *Menton v. Melvin*, 330 Mass. 355, 356.

6. The plaintiff's rights to a broker's commission for obtaining a purchaser were fixed by the execution of the purchase and sale agreement by the seller. *Menton v. Melvin*, 330 Mass. 355, 356.

7. If by listing the property it was the understanding of the parties that the plaintiff should effect a sale, it is settled that he became entitled to his commission when the defendant seller executed a binding contract of sale with Rodman. *Menton v. Melvin*, 330 Mass. 355, 357.

8. The words 'It is understood and agreed that a broker's commission of $800.00 on the said sale is to be paid to Norman M. Parkhill by the said party of the first part' contained in the purchase and sale agreement are un-

qualified and the plaintiff earned his commission when the defendant executed said agreement. *Richards v. Gilbert,* 336 Mass. 617, 620.

9. There is no evidence that the plaintiff's right to a broker's commission depended upon the consummation of the sale. *Pierce v. Leopold Morse Mfg. Co.,* 181 N.E. 2nd 693".

The court denied Nos. 1, 2, 8 and 9 and referred to the findings.

Nos. 3 and 5 were granted but ruled inapplicable.

No. 4 Denied—with a statement there was no finding of a binding agreement until defendant's wife's signature was affixed and condition precedent was performed.

No. 6 Denied—saying this would be a correct rule of law provided the purchase and sale agreement was an unqualified and unconditional agreement; but I do not so find, and find further that the condition had not been carried out.

No. 7 Denied—stating, "I do not find that a 'binding' contract of sale was executed, nor do I find that the condition precedent relating to financing was carried out, and unless condition was carried out paragraph pertaining to broker's commission was to be invalidated together with remainder of agreement."

The ordinary duty of a real estate broker in the absence of special circumstances is to procure a customer who is ready, willing, and able to buy upon the terms proposed by the

seller, and if he does so, he is entitled to a commission. *Buono v. Cody,* 251 Mass. 290-291.

If a binding purchase and sale agreement is executed between the seller and the buyer, the broker is entitled to a commission, regardless, of whether the buyer is ready, willing, and able or not. *Menton v. Melvin,* 330 Mass. 355; *Stone v. Melbourne,* 326 Mass. 372; *Johnson v. Holland,* 211 Mass. 363.

If the agreement, which is attached to this report, is defective as alleged by the defendant, and is not a binding agreement, the plaintiff must then prove that he produced a buyer ready, willing, and able to buy on the defendant's terms, in order to be entitled to a commission. *Barsky v. Hansen,* 311 Mass. 14; *Buono v. Cody, cited supra* and *Roche v. Smith,* 176 Mass. 595. Then only if the contract of authorization did not require him to complete the sale, in other words, if the sale had to be consummated before he was entitled to a commission, then the fact that the buyer was ready, able, and willing is of no import, and he cannot collect.

The agreement in this case is defective, and the judge so found, because of the failure of the defendant's wife to sign; but only in that respect.

In all other respects, this was a completed memorandum of the sale. It was signed by the party to be charged, the buyer, and by the record title holder, the owner, and the terms were clear and unequivocal in all other

essentials and agreed to by the parties, who were brought together by the broker.

The fact that the defendant's wife did not sign the agreement to release her dower does not, in and of itself, negate the plaintiff's right to a commission under these circumstances. "A defendant may be liable to pay a broker, employed by him even though his title itself is defective and even though he had no title at all." *Roche v. Smith, cited supra* and *Coney v. Brookline Savings Bank,* 327 Mass. 527.

There is nothing in the record to show that a completed sale was required before a commission was earned in this case. "By hiring a broker to 'sell', 'make a sale' or obtain a buyer does not necessarily mean that an actual sale should be made as a condition precedent to right of the broker to receive a commission. The words 'to sell' or 'to make a sale' mean that the principal should be furnished by the broker with a purchaser who is ready, able and willing to buy on the principal's terms. The word 'sale' means to furnish to the principal the opportunity to sell his property." We are of the opinion that the broker did just that in this case. *Walker v. Russell,* 240 Mass. 386, cases cited and *Dangel, Real Estate Brokers, Page* 119.

The report in this case states that the plaintiff (the broker) was authorized to *obtain a buyer, nothing more.* He showed the property, and an agreement was signed on May 24, 1963 by the buyer and seller

with a price of $22,500.00 and a deposit of $500.00 was paid at that time. The closing was set for June 14, 1963. See: *Maher v. Haycock,* 301 Mass. 594; *Richards v. Gilbert,* 336 Mass. 617; *Walker v. Russell,* 240 Mass. 386.

The defendant's brief contains no citations whatsoever to substantiate any of his contentions, but he further contends and the court so found, that although the buyer was ready and willing, there was insufficient proof that he was "able" and that he was not able because he did not *obtain* a savings bank mortgage according to the terms set out in the agreement. Actually, the buyer did secure a mortgage from a co-operative bank in accordance with the exact terms set out in the agreement, and there was further evidence that the bank agreed to this loan, but could not or did not complete this loan because of an attachment existing on the property. To be *able* the buyer must be *financially capable* of consummating the transaction. *Dangel, Real Estate Brokers, Page* 143, and see *Hutchinson v. Plant,* 218 Mass. at 152. It appears that the buyer was financially capable and did everything he could to *obtain* such a mortgage. Obviously, this clause was for his protection; that is, the clause with respect to obtaining such a mortgage. It now appears the seller wants to take advantage of it and relies on the attachment against him as the reason for the failure of the buyer to be *able* to obtain a mortgage. We cannot agree with

this conclusion. See *Walker v. Russell, cited supra.*

As to the attachment, despite the fact there was no evidence of bad faith, it would be most untenable to allow the seller to set this up in defense of a suit by the broker, the owner being the only one in a position to remove or take some action concerning the attachment, other than the attaching creditor himself. The broker would certainly be powerless in this respect. See: *Fitzpatrick v. Gilson,* 176 Mass. 477; *Lucier v. Young,* 338 Mass. 671.

Furthermore, the broker is not required to guarantee or inquire into the property he has been hired to sell; so if the principal on account of some defect of title or impediment is prevented from carrying out the transaction it is the *principal's duty to remove or extinguish the same* and not part of the duty of the broker. See: *Washburn v. Bradley,* 169 Mass. 86 and *Fitzpatrick v. Gilson, cited supra.* In other words, the defendant cannot escape liability because of the defective agreement in this case when the broker produced the customer as required.

It is also not part of a broker's duty to secure a binding, written contract between the principal and customer, unless the *contract of authorization clearly* requires the execution of a written, binding contract. The record before us does not disclose any such requirement in this case. *Green v. Levenson,* 241 Mass. 223; *Walker v. Russell,* 240 Mass. 386;

*Wheelock v. Barnstein,* 214 Mass. 595; *Leland v. Barber,* 228 Mass. 144.

We think the court's finding in this respect was plainly wrong.

The defendant employed the plaintiff to procure a customer ready, willing, and able to buy on his terms, and when this was done, the broker was not further required to show that a sale resulted (See *McKallagat v. LaCognata,* 335 Mass. 376; *Coney v. Brookline Savings Bank,* 327 Mass. 527; *Monk v. Parker,* 180 Mass. 246) or even that a written agreement of sale was ever entered into by the parties. See: *Barsky v. Hansen,* 311 Mass. 14; *Stone v. Melbourne,* 326 Mass. 372; *MacDonald v. Mihaloposilos,* 337 Mass. 262.

The mere fact that the buyer obtained the mortgage from a co-operative bank rather than a savings bank is of little or no significance. The amount stated and the terms were exactly as called for by the agreement. There were no special circumstances in this case, and we think the broker is entitled to his commission. See: *Maher v. Haycock, cited supra* and *Richards v. Gilbert, cited supra.*

To sum it up, as the court said in *Henderson and Beal, Inc. v. Glenn,* 329 Mass. 748,

"The obligation of an owner, or one who engages a real estate broker, to pay a commission to the broker has been the subject of frequent litigation in our courts. Through a maze of conflicting fact and confusion of varying circumstances one clear rule has been established and that is that a broker

in the absence of special circumstances is entitled to a commission if he produces a customer ready, able, and willing to buy upon the terms and for the price given the broker by the owner. In *Ripley v. Taft*, 253 Mass. 490, at pages 492-493, it was aptly stated, 'The obligation of a broker employed to procure a customer for the purchase of property is at an end, and he is entitled to a commission, *when such customer has been produced*. It is immaterial whether a contract between the seller and prospective purchaser is made, or, if made, whether carried into effect; that is a matter with which the broker is not concerned and on which his right to a commission is in no way dependent.' This rule has been but recently affirmed in *Palmer Russell Co. v. Rothenberg*, 328 Mass. 477, 481, and *Alphen v. Bryant's Market, Inc.*, ante, 540, 542. And 'the right of the broker to his commission is not affected by the fact, if it is a fact, that the principal was only a part owner of the land to be sold.' *Monk v. Parker*, 180 Mass. 246, 247; *Coney v. Brookline Savings Bank*, 327 Mass. 527, 528."

The finding for the defendant should be vacated, and since the correct disposal of the plaintiff's requests 1, 2, 8 and 9, would have disposed of the case in favor of the plaintiff rendering the other requests immaterial, *judgment is to be entered for the plaintiff in the sum of $800.00 plus costs.*

Ernest L. White, Jr., of Mansfield, for the Plaintiff.

Anthony M. Vignone, of Franklin, for the Defendant.