NATHAN SIEGEL *vs.* BROCKTON SAVINGS BANK.

Suffolk.     November 10, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Broker*, Commission.   *Contract*, What constitutes, Sale of real estate.

Evidence that, upon transmittal by a broker to the owner of real estate of the terms of an oral offer made by a prospective purchaser, the owner had requested references respecting the prospective purchaser and had directed the broker to "get it in writing from" him, that the prospective purchaser then had written to the owner stating the same terms as those orally communicated but adding that "in the event of acceptance of the foregoing offer title [was] to be taken in the name of my nominee," that the proposal so submitted in writing was rejected, and that the property never was conveyed to the prospective purchaser, did not entitle the broker to recover a commission.

CONTRACT.   Writ in the Superior Court dated September 16, 1941.

The case was tried before *Brogna*, J.

*M. Rosenthal*, for the plaintiff.

*M. J. Zieman*, for the defendant.

Cox, J.   This is an action of contract to recover a commission for allegedly procuring a customer ready, able and willing to buy real estate of the defendant.   The trial judge, upon motion, directed the jury to return a verdict for the defendant, subject to the plaintiff's exception.   It is stipulated that if the case should have been submitted to the jury, judgment is to be entered for the plaintiff in the sum of $3,400, with interest.

The plaintiff testified that he went to the defendant bank, where he was given the income and expenses of the real estate in question by one Hall, who could have been found to be the manager of the defendant's real estate department; that he was told what the "Board of Directors" wanted for the property, and that he told Hall that he would try to obtain a purchaser.   He saw one Konigsberg and obtained from him three offers, none of which was con-

sidered.  He saw Hall later and told him that the best offer he could get was "$100,000, down payment of $4000 in cash, and the bank would take back a mortgage of $96,000 at the rate of interest of two percent per annum with principal payments of one percent per year on the unpaid balance."  The plaintiff further testified that Hall then said to him: "If you can get me some references, I will put it up to the Board"; that he gave the references and was told to return within a few days; that upon his return, Hall told him that the "Board" had accepted his offer of $100,000.  "Your customer's references check up fine, the Board is pleased with them."  Hall also told him to "get it in writing from Mr. Konigsberg with a deposit check."

The plaintiff saw Hall the next day, gave him a deposit check and a letter signed by Konigsberg, in which he stated that he was ready and willing to purchase "under the following terms and arrangements: Price $100,000., down payment $4,000., the balance of $96,000. to be taken back as a mortgage by your institution for a period of five years bearing interest at the rate of 2% per annum with 1% amortization per year.  Payments of interest, taxes and principal to be apportioned on a monthly basis.  In the event of acceptance of the foregoing offer title to be taken in the name of my nominee.  Enclosed find check in the amount of $300. to bind said offer."  The plaintiff's name as broker appeared in one corner of this letter.  He testified that, when this letter was delivered, Hall told him that he would have the agreements of sale drawn within a few days.

A few days after the receipt of this letter, a letter was written to Konigsberg in which it was stated that his offer, contained in his letter addressed to the defendant, had been referred to the "Board of Investment" and had been rejected, and that the check that. had accompanied the letter was returned.  Konigsberg, a witness for the plaintiff, testified that he "finally sent an offer of $4,000 with the selling price $100,000., the bank to take a mortgage back of $96,000., 2% interest and 1% on principal a year";

that he put a check in of $300; that previous to putting the check in, he had spoken to the plaintiff about the "$100,-000 and the $4,000, and that he, Mr. Konigsberg was ready, willing, and able to buy the property on the terms he testified to"; that subsequently he wrote a letter to the bank and received a letter from it several days later; and that before he wrote the letter, he gave the plaintiff references. It is unnecessary to determine whether Hall had express or ostensible authority to employ the plaintiff or to accept an offer. See *Schleifer* v. *Worcester North Savings Institution,* 306 Mass. 226, 228–229; G. L. (Ter. Ed.) c. 168, § 16.

The plaintiff testified that he knew that the board of investment alone of a savings bank had authority to determine the amount of and to make a loan; that the only authority to accept or reject an offer was the "Board of Directors"; that he knew on the next day after the date of the letter hereinbefore referred to rejecting the offer, that the bank would not sell the property "in accordance with his letter, in other words, he knew the very next day that his offer had been rejected."

The plaintiff contends that the offer that was accepted was not the one contained in Konigsberg's letter, but, on the contrary, that the defendant had accepted the oral offer, hereinbefore quoted. We are of opinion that this contention cannot be maintained. When the oral offer was made, the plaintiff was asked for references, and there can be no other conclusion than that these references related to Konigsberg, and that it was clearly understood that Konigsberg, and no one else, was to be the purchaser. Up to that time there had not been even a suggestion that, if the offer was accepted, title was to be taken in the name of any one else. Moreover, we think it follows that whatever Hall may have said with reference to the acceptance of this offer was qualified or conditional upon the plaintiff's getting "it" in writing from Konigsberg with a deposit check. The plaintiff undertook to comply with this condition. What he brought back to Hall, however, was a counter proposal that did not comply with the terms of the oral offer. Konigsberg, in his letter to the defendant, expressly provided that

"In the event of acceptance of the foregoing offer [contained in the letter] title to be taken in the name of my nominee." It is apparent from this that any "check" of Konigsberg's references, the giving of which, according to the plaintiff, was a condition to be complied with before Hall would present the offer to the board of investment, would amount to nothing.

When the plaintiff first talked with Hall, he was told that the defendant wanted $100,000 for the property with a down payment of $10,000. The final oral offer was for a down payment of $4,000. It is apparent that the defendant, before considering this offer, was desirous of getting what information it could relative to Konigsberg's ability to carry out the terms of the offer if it was accepted, and that at no time until Konigsberg's letter was received was there ever any suggestion that he was not to take title in his name. It is true that the plaintiff testified that the offer in writing was identical with the oral offer, but where, as here, the bill of exceptions states that all facts and evidence material to the issues raised are set forth, the only conclusion possible is that the offers were not identical. Moreover, we think that Konigsberg's testimony requires the conclusion that the offer that he was ready to carry out was the offer contained in his letter to the bank. It follows that Konigsberg's offer to purchase was never accepted by the defendant.

The property was not conveyed to Konigsberg. The plaintiff excepted to the striking out of certain testimony as to what Hall said to him at some time after the offer had been definitely rejected. It is unnecessary to recite that testimony or to say more than that if Hall had any authority to make any of the statements attributed to him, which we do not decide, the excluded testimony, if it had been admitted, would not alter the result reached.

*Exceptions overruled.*