WILLIAM J. MACDONALD *vs.* LAMBROS A. MIHALOPOULOS
& another.

Suffolk.  March 4, 1958. — April 4, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Broker*, Commission.

Evidence that a broker employed by a landowner to procure a purchaser
for his land produced a customer who orally agreed with the owner
to purchase the land on the owner's terms, made a deposit, received
a receipt signed by the owner, and agreed to execute a written sale and
purchase contract, but thereafter failed to execute the written contract
and finally informed the broker that he did not have the necessary
money to buy the land and was no longer interested in buying it,
warranted a finding that the broker had not produced a customer
ready, able, and willing to buy the land and had not earned a com-
mission.

CONTRACT.  Writ in the Municipal Court of the City of
Boston dated February 23, 1955.

The action was heard by *Barron*, J.

In this court the case was submitted on briefs.

*Jacob Friedberg*, for the plaintiff.

*Joseph Coviello*, for the defendants.

SPALDING, J.  In this action by a real estate broker for a
commission, there was a finding for the defendants.  A re-
port to the Appellate Division was dismissed, and the plain-
tiff appealed.

We summarize the pertinent evidence as follows: In May,
1954, one John F. Collins was interested in purchasing a
tavern which was located on property of the defendants at
142–146 South Street, Jamaica Plain.  Collins instructed the
plaintiff, who knew the defendants, to negotiate with them
for the purchase of the property, but the plaintiff was told
not to concern himself with the purchase of the tavern.
On May 19, 1954, the plaintiff went to one of the defendants,

Lambros A. Mihalopoulos (hereinafter sometimes called the defendant), and told him that he had a buyer who would pay $24,000 for the South Street property. On the following day the plaintiff brought Collins to the defendants and the parties agreed to a sale of the property for $24,000 in cash. Collins made a cash deposit of $1,000 and both defendants executed duplicate receipts therefor. The receipts described the location of the property and stated the amount of the sale price. Collins signed the receipts as a witness. On both receipts it was stated that the plaintiff was broker for the defendants and it was agreed at the trial that the plaintiff was employed by the defendants to sell the property in question. It was also agreed that Collins was "presented by the plaintiff to the defendants." The plaintiff testified that the defendant said at this meeting, "If you can put it through for $24,000 I'll give you $1,000." The defendants' version was that the plaintiff was to get a commission of $1,000 "when papers are passed."[1]

At the time the receipts were executed (which was on a Thursday) it was agreed that a purchase and sale agreement was to be executed by Collins and the defendants at the office of the defendants' attorney on the following Monday, and that the plaintiff in the meantime was to have the agreements drawn by his attorney, Mr. Friedberg.

At the time and place agreed upon for the execution of the agreements neither Collins nor the plaintiff appeared. On the following day a lawyer from Mr. Friedberg's office delivered unsigned agreements to the defendants' lawyer. At no time thereafter did Collins ever get in touch with the defendants' lawyer or make any attempt to execute a written agreement. About ten days after Collins had given the deposit to the defendants he purchased the tavern for the sum of $24,000. He then informed the plaintiff that he did not have the necessary cash to purchase the South Street property and that he was no longer interested in acquiring it.

---

[1] For reasons that will appear later nothing turns on this difference. Even if the plaintiff's version is accepted the result would be the same.

The judge found that the defendants agreed to pay the plaintiff a commission only if he produced a purchaser ready, able, and willing to buy the property and that such a purchaser was never produced. The questions for decision arise out of the judge's denial of two rulings requested by the plaintiff. These in substance asked the judge to rule that in procuring Collins as a prospective purchaser of the property at a price set by the defendants, coupled with the facts of the deposit by Collins and the receipt therefor signed by the defendants, the plaintiff had done all that he was required to do to earn his commission.

These rulings were rightly denied. It is not disputed that the plaintiff procured Collins, who orally agreed with the defendants to purchase the property in question at the price fixed by them, and that Collins also made a deposit of $1,000. But beyond that point Collins would not go. Having acquired the tavern, he informed the plaintiff that he was no longer interested in purchasing the property.

On this evidence a finding was amply warranted, if not required, that the plaintiff had not produced a customer who was ready, able, and willing to purchase the property. A broker does not earn his commission merely by producing a customer who orally agrees to purchase the property on terms satisfactory to the seller. He must procure a customer who is in fact ready, able, and willing to do so. If the customer procured by the broker is ready, able, and willing to purchase the property on the terms fixed by the seller, the broker's duty is at an end and he has earned his commission. His right to a commission is not affected by the failure of the customer and the seller to enter into a binding agreement, or by the refusal of the seller to carry out the transaction. These principles are clearly set forth in the leading case of *Fitzpatrick* v. *Gilson*, 176 Mass. 477. Other cases to the same effect are *Goodnough* v. *Kinney*, 205 Mass. 203, *Ripley* v. *Taft*, 253 Mass. 490, 492–493, *Westlund* v. *Smith*, 291 Mass. 96, 99, and *Chapin* v. *Ruby*, 321 Mass. 512, 515. Thus, in the case at bar, if Collins, despite the fact that no binding agreement had been entered into with the de-

fendants, was ready, able, and willing to purchase the property at the time for performance, the plaintiff would not have been deprived of his commission if the defendants had refused to perform. But that is not the case here. The infirmity in the plaintiff's case, as the Appellate Division observed, is that "While . . . [the plaintiff] has found a seller who was ready, willing, and able to sell, he did not produce a buyer who was ready, willing, and able to buy." The case at bar is on all fours with, and is governed by, *Bemister* v. *Hedtler,* 249 Mass. 40. See *Bruce* v. *Meserve,* 228 Mass. 463; *McCarthy* v. *Reid,* 237 Mass. 371; *Belisle* v. *Barry,* 253 Mass. 475; *Higgins* v. *Ginsburg & Goodman, Inc.* 278 Mass. 497. See also cases collected in Note 12 A. L. R. (2d) 1410, at page 1414.

It is to be noted that Collins's undertaking to purchase the property from the defendants was not enforceable; it was wholly oral and hence within the statute of frauds. The receipts signed by the defendants bound them but not Collins. The case therefore is not one where by reason of the execution of an agreement binding both parties the seller is deemed to have accepted the purchaser as ready, able, and willing to buy, so that proof that he was such is not required. See *Stone* v. *Melbourne,* 326 Mass. 372, 373, and cases cited.

*Order dismissing report affirmed.*