# John J. Staab v. Joseph Messier

[264 A.2d 790]

No. 5-69

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed April 7, 1970

*John A. Burgess,* Montpelier, for Plaintiff.

*Martin, Free & Bernasconi,* Barre, for Defendant.

**Smith, J.** This is an action by the plaintiff to recover a real estate commission from the defendant. John J. Staab, the plaintiff, a real estate broker of the City of Montpelier, seeks to recover a commission from Joseph Messier, the defendant, on the grounds that he produced a buyer, ready, willing and able to purchase the property of the defendant, located in the Town of Berlin. Trial was had by jury in the Vermont District Court, Unit 5, Washington Circuit. The motion of the defendant for a verdict directed in his favor, made at the close of the evidence in the case, was denied by the trial court and an exception was taken. The jury returned with a verdict for the defendant, which, upon motion of the plaintiff, was set aside by the trial court, and a new trial ordered. Defendant has appealed the case here before final judgment.

The complaint of the plaintiff asserted that through his agency a contract was entered into between the defendant

and one John Pepin in which contract Pepin agreed to buy the property of the defendant, and that the said contract, having been duly signed by both parties, the plaintiff became entitled to his commission. The contract entered into between the parties, and received in evidence in the district court, is quoted below:

"AGREEMENT OF SALE

The undersigned Joseph Messier of East Montpelier, Vermont agrees to sell for the price of $15,000 property in Berlin Vt. house and lot 100 x front to fence and the undersigned John Pepin of Barre, Vermont agrees to purchase said property at said price.

Deposit $500 Closing on or before April 25, 1968. Dated at Berlin, Vermont this 10th day of April, 1968.

5%

WITNESS
John J. Staab

John R. Pepin
Joseph O. Messier"

The above exhibit is partly in print and partly in long hand, and the "5%" appearing thereon is followed by an unreadable notation.

In our opinion, the heart of the dispute before us can best be determined by going directly to the motion made by the defendant for a verdict directed in his favor, which was denied by the lower court and to which an exception was taken.

"When a defendant has made a motion for a directed verdict which has been denied and an exception taken, any subsequent error against the plaintiff is rendered harmless if it should be made to appear in this Court that the motion for a verdict should have been granted and the test should be applied in this Court even though the question of the ruling on the motion is not here for review, the case being merely on the plaintiff's exceptions." *Russell* v. *Pilger*, 113 Vt. 537, 544, 37 A.2d 403.

The same procedural rule applies to the present appeal before final judgment. One of the questions certified is whether the evidence supports the verdict which the lower court set aside. In examining that question, if the record dem-

onstrates that the evidence does not support a verdict contrary to that rendered by the jury, as a matter of law, the lower court was in error in vacating the result reached by the jury and final judgment should be entered here, as provided in 12 V.S.A. Sec. 2386.

It necessarily follows that the subsequent proceedings of the submission of the cause to a jury, its verdict, and the setting aside of such verdict by the trial court were for naught. No objections to such unneeded proceedings would be here for us to consider.

The motion for a verdict to be directed in his favor was advanced by the defendant on various grounds, the most important of which were that there was a lack of any evidence that Pepin partially performed the contract by paying the $500, or that he ever consummated or attempted to consummate the contract by the date of April 25, 1968 as specified in the contract. It was the argument of the defendant that the plaintiff produced no evidence that in Pepin he had procured a buyer for the property of the defendant who was ready, willing and able to purchase the property.

In argument against the granting of the motion of the defendant for a directed verdict, the plaintiff asserted that to recover his commission it was only necessary for the plaintiff to procure a buyer, provided the result of such procurement was an entering into a contract between the seller and the purchaser for the sale of the property. The plaintiff contended that under the case of *Benoit* v. *Wing,* 117 Vt. 477, 94 A.2d 237, the signing of the contract between the parties was all the evidence needed that he had produced a buyer, ready, willing and able to purchase said property.

The factual background of *Benoit* v. *Wing, supra,* was that the parties entered into a contract for the sale and purchase of real estate, with the buyer giving the seller a down-payment of $300.00, which the seller immediately turned over to the real estate broker as his agreed-upon commission. The suit was brought by the seller of the property against the real estate broker for the return of the commission already paid, when the prospective buyer refused to consummate the sale, and forfeited the $300.00 already paid in earnest money. No claim was made in that case that the buyer would not have been able to comply with the terms of the contract in the event

he ·had not refused to fulfill his· contractual obligation. The holding in the *Benoit* case was "To entitle a broker to a commission for the sale of property it is necessary for him to produce a person ready, willing and able· to purchase the property."·

In the case now before us no evidence·was produced by the plaintiff that Pepin, the prospective buyer, was ready, willing or able to go through with the contract that he ·had made. The giving of a $500 check by Pepin· to the defendant was not a partial payment on the contract price. Pepin's own testimony, as a witness produced by the plaintiff, was that the check was to be held, uncashed, by the plaintiff, ·until Pepin was able to ascertain whether or not he could raise the balance of the $15,000.00 purchase price by the closing date set forth in the contract. Indeed, in argument before the lower court, appearing on the record before us, it was conceded that at the time Pepin gave the $500.00 check to the defendant that he had insufficient funds in the bank to pay the same.·No evidence was introduced into the case below that Pepin ever made any effort to comply with the contract on or before the date of purchase set forth in the contract.

We quote, with approval, from the New. Jersey case of *Elsworth Dobbs, Inc.* v. *Johnson*, 50 N.J. 528, 236 A.2d 843 at p. 853:

> "The principle that binds the seller to pay commission if he signs a contract of sale with the broker's customer, regardless of the customer's financial ability, puts the burden on the wrong shoulders. Since the broker's duty to the owner is to produce a prospective buyer who is financially able to pay the purchase price and take title, a right in the owner to assume such capacity when the broker presents his purchaser ought to be recognized. It follows that the obligation to fulfill the monetary conditions of the purchase must be regarded as logically and sensibly resting with the broker."

Also, see *Little* v. *Loud*, 112 Vt. 299, 304, 23 A.2d 628.

Admitted by· the plaintiff is that a commission for the sale of real estate can only be collected by a broker when he has produced a buyer ready, willing and able to buy the prop-

erty of the seller from whom the commission is sought. The burden of proof to establish that the customer is one who is ready, willing and able to purchase the property for sale is upon the broker, and he is not entitled to the commission he seeks until he has met that burden. In order to entitle the real estate broker to a commission the burden was on him to establish that he obtained a purchaser who was able, ready and willing to purchase for the stipulated price. *Hayden* v. *Lavallee et ux.*, 116 Vt. 340, 341–342, 75 A.2d 690.

In the instant. case that burden of proof was not furnished by the evidence produced by the plaintiff broker. It might be added that in the absence of evidence showing ability to buy the property on the part of Pepin, the purchaser under the contract, there logically followed a lack of readiness to go through with the contract. The defendant was entitled to have granted his motion for a verdict directed in his favor which he made below. The granting of the motion would have resulted in a verdict for the defendant.

*Our entry is "Judgment for the defendant."*