LUCY K. GAYNOR *vs.* W. HENRY LAVERDURE.

Middlesex.   September 11, 1972. — January 17, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Broker*, Commission.   *Evidence*, Binding a party.

A broker as matter of law was entitled to an agreed commission when she produced a customer who was ready, able and willing to purchase land on the owner's terms and the owner and the customer executed an enforceable purchase and sale agreement encompassing those terms, even though the customer failed to perform the agreement. [839–840]
The defendant in an action was bound by his own testimony in the absence of evidence more favorable to him. [840–841]

CONTRACT.   Writ in the Superior Court dated April 10, 1970.

The action was tried before *Mitchell, J.*
*J. Chester Webb* for the plaintiff.
*Louis R. Sandini* for the defendant.

QUIRICO, J.   This is an action of contract in which the plaintiff seeks to recover $9,000 allegedly due her by the defendant for services rendered by her as a broker in procuring a purchaser for the defendant's real estate. The jury returned a verdict for the plaintiff in the sum of $1,000 and the case is now before us on her exceptions to certain instructions given to the jury by the trial judge and also to the judge's refusal to give the jury certain requested instructions.

The evidence permitted the jury to find the following facts which do not appear to be in dispute in so far as material to this decision.   The plaintiff and the defendant were both licensed real estate brokers.   G. L. c. 112, §§ 87PP–87DDD (inserted by St. 1957, c. 726, § 2), as amended.   The defendant had been an assessor of the city of Marlborough, and he had dealt in and with real estate for over twenty years.   He owned a parcel of land consisting of about ninety acres located on Concord Road in Marlborough.   The plaintiff asked the defendant whether she might show the land to Thomas W. Callahan, a lawyer, who was interested in buying it and the defendant told her she might do so and agreed to pay her a ten per cent commission "on whatever price she could get a ready, willing and able buyer to agree to pay for it."

The plaintiff submitted to the defendant an offer by Mr. Callahan to purchase the land for $91,300 subject to obtaining a change in its zoning classification and also subject to the defendant's taking back a mortgage for one-half of the purchase price.   The defendant refused to accept that offer.   Thereafter the plaintiff submitted an unconditional offer by Mr. Callahan to purchase the land for $99,000.   The defendant knew Mr. Callahan to be a member of the Massachusetts bar and a man of good reputation, and he was satisfied with him as an agreed purchaser.

On January 24, 1968, the defendant and Mr. Callahan signed an agreement by which the defendant agreed to sell and convey the land to Mr. Callahan and the latter agreed to pay the price of $99,000 of which $1,000 was paid on the date of signing and the balance was to be paid on conveyance which was to be made on August 11, 1968. The agreement concluded with the following provision: "A broker's commission of $9,000 shall be paid by the seller to Lucy K. Gaynor." Before signing the agreement the defendant discussed it with his lawyer who advised him that it fairly stated his understanding of the terms of the agreement between the plaintiff and the defendant. The defendant intended to be bound by the agreement when he signed it.

On August 11, 1968, Mr. Callahan did not pay the balance of the purchase price and did not take title as required by the agreement. The plaintiff demanded payment of her commission from the defendant and the latter did not pay her. On August 27, 1968, Mr. Callahan executed and gave to the defendant a written document (a) acknowledging his agreement of January 24, 1968, with the defendant, (b) stating that on August 11, 1968, the defendant was ready, willing and able to convey title to the land in question but that he, Mr. Callahan, was not then ready, willing and able to purchase the land, and (c) declaring that the defendant retain the deposit of $1,000 as liquidated damages and that the agreement be rendered null and void. The record does not indicate that the defendant made any effort to obtain specific performance of the agreement against Mr. Callahan. The defendant had no question in his mind about the good faith of either the plaintiff or Mr. Callahan throughout the entire transaction, and does not raise such a question now.

The plaintiff seasonably filed requests that the judge instruct the jury in effect that they were required to find (a) that the defendant had unconditionally agreed to pay the plaintiff a commission of $9,000 upon her procuring a buyer ready, willing and able to buy his land, (b)

that by signing the agreement the defendant had accepted Mr. Callahan as a person procured by the plaintiff and who was ready, willing and able to buy his land, (c) that the plaintiff had acted in good faith throughout her dealings with the defendant, and (d) that the defendant owed the plaintiff the agreed commission of $9,000 plus interest thereon. The judge instead charged the jury that it was within their province to determine whether or not the plaintiff had produced a customer ready, willing and able to buy on the defendant's terms, and that if they should determine that she had done so, it was their further duty to determine what amount of money was fair and reasonable to recompense her for her services.

The judge's refusal to instruct the jury as requested by the plaintiff was error, and it was also error to give them the instructions described above.

The subject of the respective rights and liabilities of real estate brokers and their principals has received the attention of this court for over a century. At least as early as 1861 (*Farnsworth* v. *Hemmer*, 1 Allen 494), and again in 1869 (*Walker* v. *Tirrell*, 101 Mass. 257), we were required to decide cases brought by brokers who were claiming compensation for effecting exchanges of parcels of real estate, and at least as early as 1871 (*Rice* v. *Mayo*, 107 Mass. 550) we were required to decide a case brought by a broker claiming compensation for effecting a sale of real estate. Cases involving similar disputes thereafter reached this court in such large numbers that we were able to say in 1953 (*Henderson & Beal, Inc.* v. *Glen*, 329 Mass. 748, 751) : "The obligation of an owner, or one who engages a real estate broker, to pay a commission to the broker has been the subject of frequent litigation in our courts. Through a maze of conflicting facts and confusion of varying circumstances one clear rule has been established and that is that a broker in the absence of special circumstances is entitled to a commission if he produces a customer ready, able, and willing to buy upon the terms and for the price given the broker by the owner."

In the development and application of the "clear rule" quoted above, this court has held consistently that in the absence of a special agreement providing otherwise, a broker has earned his commission when he has produced "a customer ready, able, and willing to buy upon the terms and for the price given the broker by the owner." One of the earlier complete statements of this rule by this court was in the 1900 decision of *Fitzpatrick* v. *Gilson,* 176 Mass. 477, where we said at pp. 478–479: "When a broker has found a customer for that for which his principal has employed him to find a customer, the broker has performed his duty and has earned his commission, or, as the proposition is usually stated, if the person produced by the broker is able, ready, and willing to buy, sell, or lend, as the case may be, the broker's commission is earned. . . . When the broker has produced a customer, his duty is at an end; so far as his rights, or his duty, are concerned, it is immaterial whether a contract is, or is not, made, or, if made, whether it is, or is not, performed. The broker's right to a commission is no more dependent upon, or affected by, the fact that a contract is, or is not, drawn up and executed, than it is by the fact that the contract, if drawn up, is, or is not, carried into effect. Making or not making a contract with the customer produced, enforcing or not enforcing a contract, if made, are matters for the broker's principal to do or not to do, as his ability and inclination determine; they are matters with which the broker is not concerned, and on which his right to a commission is not dependent." The following are a few of the many cases in which this rule has been stated or applied. *Green* v. *Levenson,* 241 Mass. 223, 224. *Ripley* v. *Taft,* 253 Mass. 490, 492–493. *Chapin* v. *Ruby,* 321 Mass. 512, 515. *Drake* v. *Sweet,* 325 Mass. 542, 544–545. *McKallagat* v. *LaCognata,* 335 Mass. 376, 378. *MacDonald* v. *Mihalopoulos,* 337 Mass. 260, 262. *Spence* v. *Lawrence,* 337 Mass. 355, 358. *Talanian* v. *Phippen,* 357 Mass. 765.

Although a broker who has procured a customer is not obliged to see that the owner and the customer enter into

a binding contract or that the contract, if one is made, is carried out, nevertheless, if no such contract is made, the broker suing for his commission has the burden of proving that his customer was ready, willing and able to buy on the owner's terms. *Kelly* v. *Johnson,* 258 Mass. 478, 480. *Barsky* v. *Hansen,* 311 Mass. 14, 16. *Driscoll* v. *Bunar,* 328 Mass. 398, 400. *Henderson & Beal, Inc.* v. *Glen,* 329 Mass. 748, 752. See *Elliott* v. *Kazajian,* 255 Mass. 459, 464; *Siegel* v. *Brockton Sav. Bank,* 312 Mass. 614; *Lacombe* v. *Martin,* 319 Mass. 116.

Although the execution of a purchase and sale agreement between the owner and the customer produced by the broker is not a condition precedent to the broker's right to a commission, it has an important bearing on the question whether the broker has maintained his burden of proving that the customer was ready, able and willing to purchase on the owner's terms. As early as 1876 we held in *Pearson* v. *Mason,* 120 Mass. 53, 58, that "if such contract [between the owner and the broker's customer, binding the latter to purchase] were proved, he [the broker] was entitled to the commission as agreed." The conclusive nature and effect of such a contract on the issue of the purchaser's ability to pay for the property was well stated in the following language in our 1900 decision in *Roche* v. *Smith,* 176 Mass. 595, 597: "Where the broker is employed to get a customer to buy and pay for his principal's land, and it turns out that the customer is not able to pay for the land, it is settled that his inability to do so does not deprive the broker of his commission, provided the principal made a valid and binding agreement for the sale of the land with the customer produced by the broker. . . . The ground on which this is settled is that by entering into a valid contract with the customer produced by the broker the principal accepts the customer as able, ready, and willing to buy the land and pay for it. In such a case the decision would have to be the other way were it not that, by entering into the contract with him, the principal accepts the customer produced by the broker; what the broker is employed to do is to produce a customer

who will buy and pay for his principal's land. . . . If it turns out that the customer produced by the broker is not able to pay and does not pay for the land, the broker has not performed his duty and has not earned his commission; and it is only because the principal accepts the customer by entering into a valid contract with him, that it is held . . . that the broker has earned his commission." The following are a few of the many cases in which this rule has been stated or applied. *Cohen* v. *Ames,* 205 Mass. 186, 188. *Johnson* v. *Holland,* 211 Mass. 363, 364. *Hutchinson* v. *Plant,* 218 Mass. 148, 152–153. *Stone* v. *Melbourne,* 326 Mass. 372, 373. *Menton* v. *Melvin,* 330 Mass. 355, 356–357. *Richards* v. *Gilbert,* 336 Mass. 617, 618.

In several cases we said that if the owner accepted the customer produced by the broker, "[i]t does not lie in the . . . [owner's] mouth to claim, in order to defeat the . . . [broker's] recovery, that other evidence was necessary to prove that the customer was ready, able and willing to purchase." *Whitkin* v. *Markarian,* 238 Mass. 334, 336–337. *Frankina* v. *Salpietro,* 269 Mass. 292, 295. *Lieberman* v. *Cohn,* 288 Mass. 327, 332. *Westlund* v. *Smith,* 291 Mass. 96, 99.

The statement of the rule that the act of the owner in entering into a binding purchase and sale agreement with the customer procured by the broker precludes him from thereafter questioning the customer's ability to make the purchase does not mean that nothing less can require the same result. An express oral acceptance of a customer by the owner, or an implied acceptance of the customer as to ability resulting from the owner's failure to raise any question or objection to the customer on that ground may be found to have the same effect as the execution of a formal purchase and sale agreement in so far as the question of the customer's ability to purchase is concerned. *Whitkin* v. *Markarian,* 238 Mass. 334, 336. *Laidlaw* v. *Vose,* 265 Mass. 500, 503. *Stern* v. *Old Colony Trust Co.* 276 Mass. 456, 457. *Palmer Russell Co.* v. *Rothenberg,* 328 Mass. 477, 481. *Snowden* v. *Cheltenham,* 337 Mass.

295, 297. *Spence* v. *Lawrence*, 337 Mass. 355, 358–359.

All of which we have said to this point in this opinion is based on the express statement in the record to the effect that the defendant has at no time raised any question about the good faith of the plaintiff or of the customer procured by her, Mr. Callahan. It is therefore unnecessary to consider or discuss what effect the bad faith or fraud of either a broker or purchaser might have on the broker's right to a commission. See *Burnham* v. *Upton*, 174 Mass. 408, 409; *Quinn* v. *Burton*, 195 Mass. 277, 279–281; *Sullivan* v. *Tufts*, 203 Mass. 155, 157–158; *Ebert* v. *Haskell*, 217 Mass. 209, 211; *McCarthy* v. *Reid*, 237 Mass. 371, 372–373; *Spritz* v. *Brockton Sav. Bank*, 305 Mass. 170, 171–172; *Kaufman* v. *Kaitz*, 325 Mass. 149.

It may appear from the foregoing review of the development of the law relating to brokers over the past century that it is unduly favorable to brokers, particularly by permitting brokers to recover commissions for procuring customers who have been accepted by the sellers by entering into purchase and sale agreements with them but who at the time fixed for sale may not be ready, willing or able to complete the purchase. The owner is thus left in the position of having to pay the broker his commission and to pursue his legal remedies by an action for breach of contract or a suit in equity for specific performance against the defaulting purchaser. But that result is not inevitable. The owner is not helpless to prevent it or to protect himself from its consequences. He may, by appropriate language in his dealings with the broker, limit his liability for payment of a commission to the situation where not only is the broker obligated to find a customer ready, willing and able to purchase on the owner's terms and for his price, but also it is provided that no commission is to become due until the customer actually takes a conveyance and pays therefor. The opportunity for such a limitation of liability is illustrated in the following cases. *Munroe* v. *Taylor*, 191 Mass. 483, 485. *Noyes* v. *Caldwell*, 216 Mass. 525, 526. *Edward T. Harrington Co.* v. *Waban Rose Conservatories*, 222 Mass.

372, 373–374. *Carpenter* v. *Blake,* 251 Mass. 47, 49. *Ivas* v. *Galligan,* 271 Mass. 410, 413–415. *Zakszewski* v. *Kurovitzky,* 273 Mass. 448, 449–450. *Staula* v. *Carrol,* 312 Mass. 693, 694. *Rich* v. *Mezzetti,* 323 Mass. 669, 670.

The conditioning of the owner's liability for payment of a commission to a broker upon the prior payment of the full purchase price by the customer procured by the broker is legally possible, but clear and unambiguous language to that effect is necessary to accomplish that result. This is emphasized by our decisions holding that the promise of a commission on the following terms was not adequate for that purpose: (a) when the sales agreement is carried into effect (*Alvord* v. *Cook,* 174 Mass. 120, 125), (b) "when title is passed" (*Rosenthal* v. *Schwartz,* 214 Mass. 371, 373), (c) "when papers are passed" (*Canton* v. *Thomas,* 264 Mass. 457, 458–459), or (d) "if the house were sold" (*Maher* v. *Haycock,* 301 Mass. 594, 595–596). In *Canton* v. *Thomas,* Chief Justice Rugg suggested at p. 459 that "[a] condition of the payment of the commission would be expressed if the words 'if and when papers are passed' had been used in the contract here in issue in place of the words 'when papers are passed.' " That this is a fine distinction is indicated by his next statement to the effect that: "This interpretation may be not that which an inexperienced owner might think the contract to mean. But where cases arise not fairly distinguishable in their facts from *Alvord* v. *Cook,* 174 Mass. 120, and *Rosenthal* v. *Schwartz,* 214 Mass. 371, the rule there established must be followed." [1]

---

[1] The following provisions of a current standard form of "Purchase and Sale Agreement" of the Greater Boston Real Estate Board represents an attempt at an equitable apportionment of the risk of loss between a seller and a broker in the event the contracting purchaser fails to complete his purchase:

"19. BROKER'S FEE . . . A broker's fee for professional services of                is due from the SELLER to the Broker(s) herein, but if the SELLER pursuant to the terms of clause 22 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the broker's fee for professional services according to this contract, whichever is the lesser. . . .

We are aware of the fact that in several States in which the general rule of the liability of an owner of real estate to a broker procuring a purchaser ready, able and willing to purchase the real estate was substantially the same as that of Massachusetts, the law has been changed by recent judicial decisions. *Ellsworth Dobbs, Inc.* v. *Johnson*, 50 N. J. 528, decided in 1967, is perhaps the leading one of such decisions.[2] There the court, after an extensive review of the prior law, stated at p. 551, "the following conclusions as to what the controlling rule should be in New Jersey: When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his, . . . there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid. In short, in the absence of default by the seller, the broker's right to commission against the seller comes into existence only when his buyer performs in accordance with the contract of sale."

The Supreme Court of New Jersey did not limit itself

---

"22. BUYER'S DEFAULT: DAMAGES If the BUYER shall fail to fulfill the BUYER'S agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing."

[2] The following decisions apply or express approval of the rule laid down in *Ellsworth Dobbs, Inc.* v. *Johnson*. *Rogers* v. *Hendrix*, 92 Idaho 141. *Setser* v. *Commonwealth, Inc.* 256 Ore. 11. *Brown* v. *Grimm*, 258 Ore. 55. *Staab* v. *Messier*, 128 Vt. 380. See *Taylor Real Estate & Ins. Co.* v. *Greene*, 274 Ala. 694; *Sweet* v. *H. R. Howenstein Co.* 73 F. 2d 660 (D. C. Cir.); *Moore* v. *Burke*, 45 Atl. 2d 285 (Mun. Ct. App. D. C.); *Treigle* v. *Patrick*, 138 So. 2d 652 (Ct. App. La.); *Butler* v. *Baker*, 17 R. I. 582; *Valois* v. *Pelletier*, 84 R. I. 176; *Gartner* v. *Higgins*, 100 R. I. 285.

to its declaration of the new "controlling rule" which is quoted above. It anticipated that attempts might be made to avoid the consequences of the rule by contracts expressly providing that brokers would be entitled to commissions on the signing of a purchase and sale agreement by the owner and the broker's customer. On this possibility it said, at pp. 555–556: "The rules which we have set down above to govern dealings, rights, and duties between brokers and owners are necessary for the protection of property owners, and constitute the public policy of our State. Whenever there is substantial inequality of bargaining power, position or advantage between the broker and the other party involved, any form of agreement designed to create liability on the part of the owner for commission upon the signing of a contract to sell to a prospective buyer, brought forward by the broker, even though consummation of the sale is frustrated by the inability or the unwillingness of the buyer to pay the purchase money and close the title, we regard as so contrary to the common understanding of men, and also so contrary to common fairness, as to require a court to condemn it as unconscionable. . . . In view of our holding here that a broker is not entitled to commission from the seller if title does not pass because of the inability or fault of the customer, . . . in our judgment public policy requires the courts to read into every brokerage agreement or contract of sale a requirement that barring default by the seller, commissions shall not be deemed earned against him unless the contract of sale is performed. By the same token, whenever the substantial inequality of bargaining power, position or advantage to which we have adverted appears, a provision to the contrary in an agreement prepared or presented or negotiated or procured by the broker shall be deemed inconsistent with public policy and unenforceable."

It might be appropriate for us to reconsider our present rule in the light of the New Jersey rule as laid down in the case of *Ellsworth Dobbs, Inc.* v. *Johnson, supra,* if we had before us a case involving a "substantial inequality

of bargaining power, position or advantage between the broker and the other party involved." Perhaps such a case might be one involving a broker and a person selling his residence once in his lifetime and where the contracting buyer accepted by the seller is in fact not ready, able and willing to complete the purchase on the agreed date for conveyance. However, we do not have such a case on the record before us. Both the broker and the defendant in this case were licensed brokers, and the defendant appears to be more experienced than the plaintiff in that field. There is nothing in this record to indicate any "inequality of bargaining power, position or advantage" between the parties. The defendant signed the purchase and sale agreement and thereby accepted Mr. Callahan as the buyer only after consulting with his lawyer about it. The defendant's answer is limited to a general denial and a special claim that the plaintiff "never produced a buyer who was ready, willing and able to buy" the land. Thus neither the pleadings nor the evidence indicates any fraud, misrepresentation, bad faith, duress, pressure or other improper conduct by the plaintiff. In short, there is no reason apparent on the record of this case to warrant or require us to change our settled rules of law relating to real estate brokers.[3]

Under our settled rules of law the plaintiff became entitled to her commission when she produced a purchaser who was ready, able and willing to purchase the defendant's land on the latter's terms. The defendant's execution of an enforceable purchase and sale agreement with Mr. Callahan on those terms is conclusive against the defendant on the issue whether Mr. Callahan was ready, able and willing to purchase on those terms. It was therefore error for the judge to charge the jury that it

---

[3] In *LeDonne* v. *Slade*, 355 Mass. 490, 492, the plaintiff broker obtained a customer with whom the defendant agreed to convey premises "free of all tenants." On the date set for conveyance the premises were not free of all tenants and the sale was not completed. In upholding a finding for the plaintiff we said: "This is not a case in which to consider whether we should adopt the rule of *Ellsworth Dobbs, Inc.* v. *Johnson,* 50 N. J. 528."

was within their province to determine whether or not the plaintiff had produced a customer ready, willing and able to buy on the defendant's terms. He should have charged the jury that the defendant's signing of the agreement in question was conclusive on that issue.

All of the evidence in this case indicates that the amount of the commission to be paid by the defendant to the plaintiff is $9,000. That is true as to the evidence of the conversations between the parties and also as to the commission provision contained in the purchase and sale agreement between the defendant and Mr. Callahan. If the plaintiff is entitled to recover, she is entitled to $9,000 plus interest and no lesser or greater amount. It was therefore error for the judge to charge the jury that it was their duty to determine what amount of money was fair and reasonable to recompense the plaintiff for her services.

The case was submitted to the jury for decision on counts 1 and 3, the plaintiff having waived count 2. Count 1 alleges that the defendant hired the plaintiff to find a buyer for his real estate and agreed to pay her a commission therefor, that she found a buyer who was ready, willing and able to buy on the defendant's terms and with whom the defendant entered into a written purchase and sale agreement, that the defendant has failed, refused and neglected to pay her the required commission and that he owes her $9,000 plus interest. Count 3 is substantially similar to count 1 except that it alleges an express agreement by the defendant to pay her $9,000 for finding a purchaser, and it incorporates by reference a copy of the agreement between the defendant and the buyer. The jury returned a verdict for the defendant on count 1 and for the plaintiff in the sum of $1,000 on count 3.

On the defendant's own testimony it was shown that he hired the plaintiff to find a purchaser for his property and agreed to pay her $9,000 for her services, that the plaintiff found a purchaser with whom the defendant made a binding purchase and sale agreement which in-

cluded a provision obligating the defendant to pay the plaintiff a commission of $9,000, and that the defendant raised no question about the good faith of the plaintiff or the purchaser found by her. "There being no evidence more favorable to the . . . [defendant, he] is bound by . . . [his] own testimony." *Flanagan* v. *John Hancock Mut. Life Ins. Co.* 349 Mass. 405, 409. *Head* v. *Morton,* 302 Mass. 273, 276. *Moskow* v. *Smith,* 318 Mass. 76, 78. *Muir Bros. Co.* v. *Sawyer Constr. Co.* 328 Mass. 413, 415. *Johnston* v. *Senecal,* 329 Mass. 556, 557. *Jacquot* v. *Wm. Filene's Sons Co.* 337 Mass. 312, 316. See *Sullivan* v. *Boston Elev. Ry.* 224 Mass. 405; *Cohen* v. *Martin,* 298 Mass. 425, 427; *Smith* v. *Brown,* 302 Mass. 432, 433. On that testimony there was no issue of fact for decision by the jury. The plaintiff was therefore entitled to a single directed verdict in her favor in the sum of $9,000 plus interest on either count 1 or count 3, or on the two counts generally. *International Textbook Co.* v. *Martin,* 221 Mass. 1, 8. The plaintiff seasonably presented requests for instructions to the jury to such effect and they were denied by the judge. This denial was error.

The plaintiff's exceptions to the judge's instructions to the jury and to his refusal to instruct as requested by the plaintiff are sustained. The verdicts on counts 1 and 3 are set aside and a new general verdict shall be entered for the plaintiff on those counts for $9,000 damages plus interest at six per cent a year from January 24, 1968, to the date of entry of such verdict.

*So ordered.*