SIMON ZALTMAN vs. GEORGE P. FORBES & another.

Middlesex.   April 10, 1974. — October 16, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Broker*, Commission.   *Contract*, With broker.

Terms in two broker's agreements which entitled the broker to pay-
   ment of a commission on the sale of certain land unless the pur-
   chaser defaulted on the purchase and sale agreement were correct-
   ly interpreted as containing "clear and unambiguous language"
   entitling the broker to payment only if the purchaser did not
   default on a note executed by him pursuant to the purchase and
   sale agreement. [608-613]
Whether a broker whose commission was contingent on payments by
   the purchaser after the closing was entitled to have the proceeds of
   the foreclosure sale, in which the original seller was not the pur-
   chaser, treated as such a payment was not at issue where there
   were contractual provisions to the contrary.   [610-613]

CONTRACT.   Writ in the Superior Court dated June 9,
1972.

The action was heard by *Lynch, J.*

*Frank M. Geremonte* for the plaintiff.

*J. Owen Todd* for the defendants.

ARMSTRONG, J.   This is an action of contract brought
to recover a broker's commission and other compensation
from the sellers of a parcel of land.   The judge found for
the defendants.   The case comes to us on a report
pursuant to G. L. c. 231, § 111, as in effect prior to
St. 1973, c. 1114, § 199.

The facts are undisputed.   The plaintiff is a licensed
real estate broker with twenty-seven years' experience in
brokerage, appraising and developing.   The defendants,
who are brother and sister, owned a parcel of land in
Reading consisting of fifteen and a half acres.   Being un-

versed in real estate matters, they retained the services of the plaintiff over a period of years prior to 1969, when they decided to sell the property. The plaintiff found a purchaser, one Spinelli, who signed an agreement to purchase the property for $450,000, of which $2,000 was paid on signing, $58,000 was to be paid on closing, and $390,000 was to be paid in eight installments after closing. Spinelli was to execute a promissory note, secured by a purchase money mortgage, in the latter amount.[1] The purchase and sale agreement was signed on July 21, 1969.

On the same day, the defendants entered into a written "Broker's Agreement" with the plaintiff which called for the payment of a commission to the plaintiff for the sale of the property to Spinelli. The commission was $36,115, payable in installments conditioned on and prorated with payments of principal made by Spinelli under the purchase and sale agreement.[2] The fifth paragraph of the

---

[1] The fourth paragraph of the purchase and sale agreement reads in relevant part as follows: "The total purchase price to be paid . . . is . . . $450,000 . . . of which . . . $2,000 . . . have been paid . . . and the balance . . . is to be paid as follows: (a) the sum of . . . $58,000 . . . upon the passing of title . . . and (b) the remainder in the sum of . . . $390,000 . . . by promissory note . . . executed by the Buyer, secured by a purchase money . . . mortgage upon said property . . . to be duly recorded and payable as follows: (1) . . . $35,000 . . . on March 15, 1970, (2) . . . $40,000 . . . on September 15, 1970, (3) . . . $40,000 . . . on March 15, 1971, (4) . . . $40,000 . . . on September 15, 1971, (5) . . . $40,000 . . . on March 15, 1972, (6) . . . $40,000 . . . on September 15, 1972, (7) . . . $40,000 . . . on March 15, 1973, (8) . . . $115,000 . . . on September 15, 1973 . . . ."

[2] Paragraph 3 of the broker's agreement states in part: "The said commission shall be prorated in exactly the same manner as the parties in the [purchase and sale agreement] provide for the payment of the Purchase Price on pages 3 and 4 of said . . . Agreement, and the applicable portion of the commission shall only be payable upon receipt by the . . . [defendants] of the installment payments as provided . . . ." Paragraph 4 states in part that "[t]he . . . [defendants'] sole liability shall be to pay the sum total of . . . $36,115 . . . in installments as stated above . . . ." Pages 3 and 4 of the purchase and sale agreement contain the fourth paragraph thereof, quoted in relevant part in footnote 1 of this opinion.

broker's agreement provided that "[i]n the event . . . Spinelli . . . defaults on the . . . [purchase and sale agreement], then any portion of the commission, which is unpaid at the time of default shall be forgiven, and the [plaintiff agrees] that . . . [he] shall have no further claim against the [defendants] for any portion remaining unpaid."

On October 14, 1969, one day prior to the passing of papers between the defendants and Spinelli, the plaintiff and the defendants entered into a "Compensation Agreement," which provided that the defendants were to pay the plaintiff, in consideration of other services rendered by him in relation to the property, the sum of $20,000, which, as in the broker's agreement, was payable in installments conditioned on Spinelli's payments of principal under the purchase and sale agreement.[3] The second paragraph of the compensation agreement provided in part: "In the event the Buyer of the property in said . . . [purchase and sale agreement] defaults, any payments still due on the . . . $20,000 . . . provided herein, shall be forgiven and . . . [the plaintiff] shall have no further claim against . . . [the defendants]."

The passing of papers took place on October 15, 1969, and Spinelli executed the note and mortgage called for in the purchase and sale agreement. After making one installment payment, however, Spinelli encountered financial difficulties and failed to make the second payment which was due on September 15, 1970. The defendants then negotiated a "Loan Modification Agree-

[3]Paragraph 1 of the compensation agreement provides for a payment of $1,670 on March 15, 1971; payments of $2,666 on September 15, 1971, March 15 and September 15, 1972, and March 15, 1973; and a payment of $7,666 on September 15, 1973, "[s]aid payments to be expressly conditional upon receipt by the owners of all payments due and payable to them from . . . [Spinelli], to and including the date provided for payment to . . . [the plaintiff]." Paragraph 2 states in part that the $20,000 "shall, as above provided, be paid in installments if and when the payments by . . . [Spinelli] . . . shall be received by [the defendants]."

ment" with Spinelli, dated December 21, 1970, under which certain payments of principal were deferred. The plaintiff was not a party to the latter agreement but approved it and assented to its terms. Subsequently, Spinelli filed a voluntary petition in bankruptcy and thereafter made no further payments of principal. After Spinelli discontinued payments, the defendants assigned their mortgage position to a third party, realizing therefrom an amount substantially less than the then present worth of the aggregate of the unpaid installments called for by the mortgage note. A foreclosure sale subsequently held resulted in the third party's receiving payment in full of all amounts which had been due to the defendants from Spinelli.

At the time of the closing and at the time of Spinelli's first (and only) installment payment, the defendants paid the plaintiff the amount called for in the broker's and compensation agreements. When Spinelli stopped making principal payments, the defendants made no further payments to the plaintiff under either agreement. The plaintiff by this action seeks recovery from the defendants under both agreements.

The judge ruled that Spinelli's failure to make the installment payment due on September 15, 1970, was a "default" within the meaning of the provisions quoted from the broker's and compensation agreements, and that by operation of those provisions the defendants were under no further obligation to make payments under either agreement.

The plaintiff's argument is intricate. He cites decisions from other jurisdictions for the proposition that a broker whose commission is contingent on payments by the purchaser after the closing is entitled to have the proceeds of a foreclosure sale treated as such a payment, where the original seller is not the purchaser at the sale.[4] See

----

[4] *Margolis* v. *Los Angeles First Natl. Trust & Sav. Bank,* 122 Cal. App. 186 (1932). *Crane* v. *Eddy,* 191 Ill. 645 (1901). *Craig* v.

*Webber* v. *Holmes,* 174 Mass. 410 (1899). A foreclosure, he argues, constitutes an affirmation of the sale, and entitles the broker to his commission unless the contract between the broker and the seller otherwise provides. The plaintiff cites *Gaynor* v. *Laverdure,* 362 Mass. 828, 836 (1973), for the proposition that "[t]he conditioning of the owner's liability for payment of a commission to a broker upon the prior payment of the full purchase price by the customer procured by the broker is legally possible, but clear and unambiguous language to that effect is necessary to accomplish that result." There is no such clear and unambiguous language in the broker's agreement or in the compensation agreement, he argues. In particular, the default provisions of the broker's agreement (paragraph 5) and of the compensation agreement (paragraph 2), upon which the judge relied, refer to defaults by Spinelli on his obligations under the purchase and sale agreement. Spinelli's failure to meet his September 15, 1970, installment payment, the plaintiff argues, was not in default of the purchase and sale agreement but was only in default of the note which the purchase and sale agreement (see footnote 1) required Spinelli to sign. And even if the default provisions should be construed to include a failure by Spinelli to make his installment payments, the provisions, being ambiguous in this respect, could not be characterized as "clear and unambiguous language" within the meaning of *Gaynor* v. *Laverdure, supra.*

The judge interpreted the agreements correctly. We need not consider the abstract question whether Spinelli's failure to pay the installment due on September 15, 1970, could be considered a default on the note only, and not on the purchase and sale agreement. Nor need we decide whether the default provisions of the broker's and com-

---

*Margrave,* 84 Nev. 638 (1968). *Everson* v. *Newton,* 12 App. Div. 2d (N. Y.) 974 (1961). *Harris* v. *Wheeler,* 255 S. W. 206 (Texas Civ. App. 1923).

pensation agreements might plausibly be interpreted to refer to various other provisions of the purchase and sale agreement which the plaintiff argues impose obligations on Spinelli after closing and which he suggests might explain the post-closing application which the default provisions concededly have. We are of the opinion that both default provisions were clearly intended to apply to the situation that arose here.

Although the default provision of the broker's agreement refers specifically only to defaults "on the said Agreement attached hereto" (i.e., the purchase and sale agreement), paragraph 3 of the broker's agreement, which provides for the commission to be paid in installments prorated with Spinelli's installment payments, treats Spinelli's obligation to make those payments when due as an obligation imposed by the purchase and sale agreement. The references in paragraph 3 (see footnote 2) to "payment of the Purchase Price . . . [as provided] on pages 3 and 4 of said Purchase and Sale Agreement" and to "receipt by the . . . [defendants] of the installment payments as provided," and a reference in paragraph 4 to "prepayment of the principal sums due under the said Purchase and Sale Agreement," allow us to draw no other conclusion. When paragraph 5 speaks of a default on the purchase and sale agreement, it clearly comprehends a default by Spinelli in making his installment payments.

Similarly, it is irrelevant, in interpreting the compensation agreement, whether the failure to make the installment payments is a default on the note only, or on the purchase and sale agreement as well. The second paragraph states that the installments of the $20,000 to be paid by the defendants to the plaintiff shall be payable "if and when the payments by . . . [Spinelli] referenced above shall be received by . . . [the defendants]." The reference is to language in paragraph 1 (see footnote 3), which speaks simply of "payments due and payable to . . . [the defendants] from . . . [Spinelli]," without

indicating whether the source of the obligation is thought to be the purchase and sale agreement or the note. Paragraph 2 goes on to say: "In the event the Buyer of the property [i.e., Spinelli] in said . . . [purchase and sale agreement] defaults," again without limiting the concept of default to obligations arising out of the purchase and sale agreement, ". . . any payments still due . . . shall be forgiven and . . . [the plaintiff] shall have no further claim against . . . [the defendants]." Read in conjunction with the first paragraph, the default provision must be construed to treat as a default a failure by Spinelli to make installment payments when due.

The default provisions therefore apply, and although the plaintiff might consider them harsh, their effect is clear. They leave the plaintiff with no remedy to collect the balance of the sums not yet paid at the time of Spinelli's default. We need not consider whether, in the absence of contractual provision to the contrary, the proceeds of the foreclosure sale could be considered a payment entitling the broker to his commission. Here there is a contractual provision to the contrary, and it must be given effect.

We have considered the plaintiff's requests for rulings which were refused by the judge and which have not been waived on appeal. We need not determine whether the sixth request is a correct statement of law: it is not controlling in any event. We agree with the other refusals for the reasons stated by the judge.

The rulings and refusals to rule were correct, and the case is returned to the Superior Court for the further proceedings required by the rulings.

*So ordered.*