*Southern District*

# Nos. 139 and 140

## A.B.C. REALTY ASSOCIATES OF BRAINTREE, INC.
### v.
## FLORENCE J. OAKHEM, TRUSTEE OF OAKHEM REALTY TRUST

Argued: June 18, 1976. Decided: January 26, 1976.

Case tried to *Tucker, J.,* in the District Court of East Norfolk. Docket numbers 1410 and 2773.

Present: Lee, P.J.; Rider, Welsh, J.J.

Counsel for Defendant: Robert F. Murphy.

**Rider, J.** These are two actions of contract to recover a real estate broker's commissions brought between the same plaintiff and the same defendant. The first case was entered in the District Court of East

Norfolk, Docket No. 1410, on April 23, 1973. The Second Case was remanded from the Norfolk County Superior Court for trial in the District Court of East Norfolk, Docket No. 2773, on August 23, 1973. The cases were consolidated for trial on March 7, 1974. Both cases were heard by the same trial justice.

## First Case — No. 1410

This is an action of contract in which the plaintiff seeks in Count 1 of its declaration to recover the sum of $1,500.00 as an agreed broker's commission for producing a customer for real estate owned by the defendant at 394 Center Street, Randolph, Massachusetts. In Count 2 the plaintiff seeks to recover a commission for the fair value of its services rendered in producing said customer.

The answer of the defendant consists of a general denial; allegations of payment, that the defendant was induced to enter into the agreement as a result of fraudulent representations of the plaintiff and that the plaintiff was guilty of a breach of fiduciary duty owed to the defendant; a denial that the plaintiff ever produced a customer ready, willing and able to purchase; and an allegation that the contract between the plaintiff and the defendant was illegal and unenforceable. The defendant also filed a declaration in set-off alleging that the customer produced by the plaintiff made a deposit in the sum of $500.00 which was held by the plaintiff; that the customer failed to fulfill his obligations under the contract; and that said sum was retained as liquidated damages but the plaintiff failed to remit the same to the defendant after demand was made therefor.

The court found for the plaintiff on both counts of the declaration in the sum of $1,500.00 and made no finding on the defendant's declaration in set-off. The failure to make a finding on the defendant's declaration in set-off, however, was due to accident and mistake and the finding has accordingly been amended

so that the court finds for the defendant on her declaration in set-off in the sum of $500.00.

The report, which states that it contains all of the evidence material to the questions reported, indicates that *at the trial there was evidence tending to show*: that in 1972 the defendant listed the single family residence owned by her at 394 Center Street, Randolph, Massachusetts with the plaintiff for sale; that the plaintiff in July, 1972 produced a customer, namely, Robert G. Ruggerio and Carolyn A. Ruggerio; that the defendant and the customer signed a purchase and sales agreement dated July 31, 1971 (sic) wherein the defendant agreed to sell the premises for a purchase price of $18,000.00, $500.00 of which was paid as a deposit and held by the plaintiff and the balance of $17,500.00 was to be paid upon passing of papers; that the agreement was subject to the buyers' obtaining a mortgage of $14,400.00 at a recognized lending institution; that the defendant also signed a separate agreement dated July 31, 1972 in which it was agreed that the commission earned for the sale of the premises was the sum of $1,500.00; that the defendant later learned that the buyers' application for a mortgage in the sum of $14,400.00 had been approved by the Whitman Savings Bank; that the attorney for that bank examined the title and scheduled a passing for November 9, 1972 at his office; that because of marital difficulties the buyers never appeared at the closing and defaulted under the agreement and the premises were never conveyed to them; that the defendant was at all times ready, willing and able to convey the premises to the buyer; that the defendant was a widow and had previously listed the real estate with the plaintiff in March, 1972 and a purchase and sales agreement was signed but the property was not conveyed to the buyer; that the listing of March, 1972 was the first time that she had ever employed a broker to sell real estate; that although the purchase and sales agreement and agreement to pay a commission to the plaintiff are both dated July 31, 1972 they

were actually left at her home on Sunday, July 30, 1972 and returned to the plaintiff's office by the defendant on the following Tuesday; that although the plaintiff was a duly licensed real estate broker there was no evidence introduced that the agent who acted on behalf of the plaintiff was a licensed real estate broker; that the deposit in the sum of $500.00 which was paid by the buyers to the plaintiff was never accounted for by the plaintiff to the defendant; that no claim for a commission was ever made by the plaintiff until the defendant was served with a writ in April, 1973.

The defendant seasonably filed eleven requests for rulings, of which five were allowed by the trial justice and six were denied. The defendant claims to be aggrieved by the denial of her requests Nos. 4, 6, 7, 10 and 11. It appears from the docket entries that the trial justice also denied defendant's request for ruling No. 8, but this request is not recorded in the report. The defendant's requests for rulings which are in issue, together with others which were granted and which are related thereto, and the rulings of the trial justice and his disposition thereof are as follows:

"3. If the plaintiff, its agents, or servants induced the defendant to execute an agreement to pay a commission upon the misrepresentation that there would be no broker's commission due unless the property were sold, such a misrepresentation would constitute a fraud upon the defendant and a breach of the plaintiff's duty of fidelity to the plaintiff (sic). *Allowed.*

4. The evidence warrant a finding that the plaintiff breached its duty of fidelity to the defendant. *Denied.*

5. If the written agreement for a commission between the plaintiff and defendant were executed on a Sunday, such a contract is illegal and unenforceable. *Allowed.*

6. The evidence warrants a finding that the written agreement for a commission between the plaintiff and the defendant although dated July 31, 1972, was in fact executed on Sunday, July 30, 1972, and as such is illegal and unenforceable. *Denied.*

7. The evidence warrants a finding for the defendant. *Denied.*

10. The fact that the defendant executed a purchase and sales agreement with a customer produced by the plaintiff would not entitle the plaintiff to a commission if the customer were not in fact ready, willing and able to complete the purchase on the agreed date for conveyance where there is a substantial inequality of bargaining power, position or advantage between the broker and the seller. *Gaynor v. Laverdure,* 291 NE 2 617. *Denied.*

11. The evidence warrants a finding that there was a substantial inequality of bargaining power, the position or advantage between the plaintiff and the defendant. *Denied."*

The trial justice made no finding of facts. It has been repeated time and again that, upon proper requests, the trial justice must state the rules of law adopted by him for his guidance as a trier of fact in order that the right of appellate review thereof may be preserved. *Adamaitis v. Metropolitan Life Insurance Co.,* 295 Mass. 215, 219 (1936). *Memishian v. Phipps,* 311 Mass. 521, 522-523 (1942). *Perry v. Hanover,* 314 Mass. 167, 173 (1943).

The only exception to this requirement arises when the findings of fact made by the trial justice render the requests immaterial.

By her requests Nos. 4, 6, 7, and 11, the defendant sought rulings that there was evidence sufficient to justify a finding in her favor. She was entitled to these rulings or to a finding of facts by the trial justice

showing that the requested rulings had become immaterial. *Bresnick v. Heath,* 292 Mass. 293, 298 (1935). *Liberatore v. Framingham,* 315 Mass. 538, 541-542 (1944). Since the trial justice made only a general finding for the plaintiff, if there was any evidence which would permit a finding for the defendant the denial of the requested rulings would constitute reversible error. *Bresnick v. Heath,* supra, at 298-299. *Belger v. Arnot,* 344 Mass. 679, 680, (1962). *DiGesse v. Columbia Pontiac Co., Inc.* —— Mass. ——[1].

■ Based on the report before us, there was no error in the court's denial of defendant's request No. 4 because no evidence is reported of any misrepresentation, nor in fact of any representation at all, made by the plaintiff, its agents or servants, to the defendant. Neither the written agreement nor its contents were reported to the Appellate Division. Thus, we are unable in this instance to assess the pertinence of the concern voiced by the Supreme Judicial Court relative to agreements between sellers and brokers in the case of *Tristram's Landing, Inc. v. Wait,* —— Mass. ——[2]:

> "Informal agreements fairly made between people of equal skill and understanding serve a useful purpose. But many sellers, unlike brokers, are involved in real estate transactions infrequently, perhaps only once in a lifetime, and are thus unfamiliar with their legal rights. In such cases agreements by the seller to pay a commission even though the purchaser defaults are to be scrutinized carefully. If not fairly made, such agreements may be unconscionable or against public policy."

■ There was no error in the denial of defendant's request No. 6, since there is no reported evidence as to when the written agreement referred to in request No. 5 was executed.

---

[1] Mass. Adv. Sh. (1975) 3281, 3284-3290.

[2] Mass. Adv. Sh. (1975) 1360, 1371.

 The denial of defendant's request No. 7 without more, was the equivalent of a ruling as a matter of law that such a finding could not legally be made and that the evidence required a finding for the plaintiff. *Rummel v. Peters*, 314 Mass. 504, 517 (1943). Such ruling, based on oral evidence, can rarely be given in favor of the party having the burden of proof. *O'Brien v. Harvard Restaurant & Liquor Co., Inc.*, 310 Mass. 491, 493 (1941). *Hoffman v. City of Chelsea*, 315 Mass. 54, 56 (1943). We are impelled to the conclusion that a finding for the plaintiff was not required as a matter of law and that request No. 7 should have been granted.

 The report states "that although the plaintiff was a duly licensed real estate broker there was no evidence introduced that the agent who acted on behalf of the plaintiff was a licensed real estate broker." It was prerequisite to the plaintiff's recovery "in any suit or action" that it have been "a duly licensed broker at the time such service was performed." Every real estate broker or salesman must be licensed. G.L.c. 112, §87RR. By her general denial the defendant "made it incumbent upon the plaintiff to prove every element of . . . (its) case . . . ." *Herman v. Fine*, 314 Mass. 67, 69 (1943), *Albert Hopkins Corp. v. Caputo*, 357 Mass. 765 (1970).

General Laws, c.112, §87UU, as amended by St. 1972, c.684, §51, reads in part as follows:

> "An application for a broker's license by a corporation . . . shall designate at least one of its officers . . . as its representative for the purpose of obtaining its said license, and each such officer . . . so designated shall apply to the board for a broker's license in his own name at the same time unless he is already a licensed broker."

> "No broker's license shall be issued to a corporation . . . unless an officer . . . so designated has been issued a broker's license as an individual.

When the . . . corporation . . . has complied with all pertinent requirements for the issuance of a broker's license to it, the board shall . . . issue to it a broker's license which shall also bear the name of each designated officer . . . to whom a broker's license as an individual has been issued, and each such designated officer . . . shall be entitled to perform all the acts of a broker as agent or officer of such corporation . . . ."

"Except as otherwise provided, nothing in this section shall permit any other individual connected with any corporation . . ., to which a license has been issued, to act as a broker or salesman on its behalf or otherwise without first obtaining a license so to act . . . ."

We interpret the foregoing as requiring that in order for it to recover the plaintiff must prove not only that it was licensed but also that the person or persons acting on its behalf were licensed under the statute.*

---

\* §87PP. Definitions

"Real estate salesman", hereinafter referred to as salesman, an individual who performs any act or engages in any transaction included in the foregoing definition of a broker, except the completing of the negotiation of any agreement or transaction which results or is intended to result in the sale, exchange, purchase, renting or leasing of any real estate, or in a loan secured or to be secured by mortgage or other encumbrance upon real estate.
Added by St. 1957, c. 726, §2. Amended by St. 1962, c. 775, §1.

§87VV. Licensed salesmen; restrictions; notices

No broker shall engage any salesman who is not licensed. A licensed salesman engaged exclusively by a licensed broker shall not, without the knowledge and consent of such broker, act as salesman for any other licensed broker while so engaged, nor accept any valuable consideration for the performance of any act as a real estate salesman from any person except the broker by whom he is exclusively engaged, without such know-

■ We note that the brokerage agreement, the trial and the finding in the instant case antedate the decision in the case of *Tristram's Landing, Inc. v. Wait,* 367 Mass. 622.[3] Thus, the finding in this case must be based on rules set forth in prior decisions. Nevertheless, we would doubtless have been aided by the inclusion in the report of the purchase and sale agreement and the separate agreement dated July 31, 1972, or at least the pertinent portions thereof. The report states "that the defendant also signed a separate agreement dated July 31, 1972 in which it was agreed that the commission earned *for the sale* (emphasis added) of the premises was the sum of $1,500.00." We do not know whether or not the words "for the sale of the premises" appear either in the purchase and sale agreement or in the separate agreement. The report is silent in this regard and the trial justice made no finding of facts. If this language is used in either document, it could be construed as requiring that the sale be consummated before the commission is earned, *Tristram's Landing, Inc. v. Wait,* supra, at —— Mass. ——[4], as providing for a "special agreement", *Gaynor v. Laverdure,* 362 Mass. 828, 832 (1973), or as creating "special circumstances." *Henderson & Beal, Inc. v. Glen,* 329 Mass. 748, 751 (1953), wherein consummation of the sale became a condition precedent for the broker to earn his commission.

We conclude that the defendant was entitled to request for ruling No. 7 or to a finding of facts showing that the requested ruling had become immaterial.

---

ledge and consent. A licensed salesman shall promptly given written notice to the board of any change in his business address, and failure to give such notice shall be grounds for the revocation of such license.
Added by St. 1957, c. 726, §2.

Applicability of this section limited, see §87QQ of G.L.c. 112.

[3] Mass. Adv. Sh. (1975) 1360.

[4] Mass. Adv. Sh. (1975) at 1366, 1367.

The denial of this request constituted prejudicial error and a new trial must be ordered.

Since a new trial of this case is to be ordered on other grounds, we do not pause to consider whether or not the denial of defendant's requests Nos. 10 and 11 was proper, lacking a finding of facts by the trial justice. We do observe, however, that the language of request No. 10 follows closely the language of the Supreme Judicial Court in *Gaynor v. Laverdure*, 362 Mass. 828, 838-839 (1973), and that the facts of this case appear to resemble the facts of the hypothetical case described therein. Moreover, it is unclear why the trial justice denied defendant's request No. 10 in this case and allowed defendant's identical request No. 8 in the Second Case (infra).

The reasons requiring a new trial apply to the count in quantum meruit as well as to the count in contract. Furthermore, we do not have before us either the purchase and sale agreement or the separate agreement between the plaintiff and the defendant. Some forms of agreement provide for the equitable apportionment of the risk of loss between a seller and a broker in the event the buyer defaults. See, *Gaynor v. Laverdure*, 362 Mass. 828, 836, fn. 1 (1973).

**The finding for the plaintiff in the First Case is vacated and a new trial is ordered.**

## Second Case — No. 2773

This is an action of contract in which the plaintiff seeks in Count 1 of its declaration to recover the sum of $2,000.00 as an agreed broker's commission for producing a customer for real estate owned by the defendant at 394 Center Street, Randolph, Massachusetts. In Count 2 the plaintiff seeks to recover a commission for the fair value of its services rendered in producing said customer.

The defendant's answer consists of the same averments as the answer filed in the First Case.

The court found for the plaintiff on both counts of its declaration in the sum of $2,000.00.

*At the trial there was evidence tending to show:* that in 1972 the defendant listed the single family residence owned by her at 394 Center Street, Randolph, Massachusetts with the plaintiff for sale; that the plaintiff in December, 1972 produced a customer, namely, Joseph O. Braga and Linda M. Braga; that the defendant and customer signed a purchase and sales agreement dated December 11, 1972 wherein the defendant agreed to sell the premises for a purchase price of $17,500.00, $1,000.00 of which was paid as a deposit and the balance of $16,500.00 was to be paid upon passing of papers; that the defendants also signed a separate agreement dated December 11, 1972 in which it was agreed that the commission earned for the sale of the premises was the sum of $2,000.00; that thereafter on March 15, 1973 the premises were conveyed by the defendant to the buyers; that the defendant was not present at the closing but was represented by her attorney; that the defendant never paid the plaintiff the commission in the sum of $2,000.00; that the defendant was a widow and had previously listed the real estate with the plaintiff in March, 1972 and July, 1972 and purchase and sales agreements were signed in each instance but the property was not conveyed to either buyer and that these occasions were the only times that she had ever employed a broker to sell real estate; that although the purchase and sales agreement and agreement to pay a commission to the plaintiff are both dated December 11, 1972 they were actually left at her home on Sunday, Decem-

ber 10, 1972, and returned to the plaintiff's office by the defendant on the following Tuesday; that although the plaintiff was a duly licensed real estate broker there was no evidence introduced that the agent who acted on behalf of the plaintiff was a licensed real estate broker.

At the close of the evidence and before the final arguments the defendant filed ten requests for rulings. The requests and the rulings thereon are as follows:

"1. The relation of principal and broker is a fiduciary one involving trust and confidence and the broker is bound to exercise the utmost good faith in his dealings with his principal. *Berenson v. Nirenstein,* 326 Mass. 285. *Swaney v. Clark-Wilcox Co.,* 331 Mass. 471 (476). *Allowed.*

2. An agent or other fiduciary who is unfaithful to his trust may be denied compensation. *Little v. Phipps,* 208 Mass. 331. *Shulkin v. Shulkin,* 301 Mass. 184. *Allowed.*

3. If the plaintiff, its agents, or servants induced the defendant to execute an agreement to pay a commission upon the misrepresentation that there would be no broker's commission due unless the property was sold, such a misrepresentation would constitute a fraud upon the defendant and a breach of the plaintiff's duty of fidelity to the plaintiff (sic). *Allowed.*

4. The evidence warrants a finding that the plaintiff breached its duty of fidelity to the defendant. *Denied.*

5. If the written agreement for a commission between the plaintiff and defendant were executed on a Sunday such a contract is illegal and unenforceable. *Allowed.*

6. The evidence warrants a finding that the written agreement for a commission between the plaintiff and the defendant although dated December 11, 1972, was in fact executed on Sunday, December 10, 1972, and as such is illegal and unenforceable. *Denied.*

7. The evidence warrants a finding for the defendant. *Denied.*

8. The fact that the defendant executed a purchase and sales agreement with a customer produced by the plaintiff would not entitle the plaintiff to a commission if the customer were not in fact ready, willing and able to complete the purchase on the agreed date for conveyance where there is a substantial inequality of bargaining power, position or advantage between the broker and the seller. *Gaynor v. Laverdure,* 291 NE 2 617. *Allowed.*

10. The evidence warrants a finding that there was a substantial inequality of bargaining power, the position or advantage between the plaintiff and the defendant. *Denied.*"

The defendant claims to be aggrieved by the denial of her requests Nos. 4, 6, 7 and 10. No finding of facts by the trial judge is reported. Defendant's request No. 9 is not reported but it appears from the docket entries that it was allowed.

Defendant's requests Nos. 3 and 4 in each case are identical. Since in this case the real estate was sold, request No. 4, based as it is on request No. 3, was inapplicable and was properly denied. We reach the same result with respect to request No. 10, which is founded on No. 8, for the same reason.

■ There was no error in the denial of defendant's request No. 6, inasmuch as there is no reported evidence as to when the written agreement referred to in request No. 5 was executed.

■ Defendant's request No. 7 should have been granted, and its denial constitutes prejudicial error. As we stated in reference to the identical request No. 7 in the First Case, we interpret G.L.c. 112, §87UU as requiring that in order for it to recover the plaintiff must prove not only that it was licensed but also that the person or persons acting on its behalf were licensed under the statute.

■ We note that in the First Case, the plaintiff was awarded a broker's commission in excess of 8.3% of the stated selling price even though the sale was not consummated through no fault of the defendant. Such an award would not be permitted to stand in a case governed by the rules set forth in the case of *Tristram's Landing, Inc. v. Wait,* —— Mass. ——[5]. In the

Second Case the finding for the plaintiff is in an amount of more than 11.4% of the selling price. Having in mind that defendant's real estate ultimately sold for $17,500.00, the decisions in these two cases award broker's fees to the plaintiff totaling 20% of the gross proceeds of the sale. Although no evidence is reported concerning the customary fees of real estate brokers in the Randolph area, these fees do seem excessive.

The finding for the plaintiff in the Second Case is vacated and a new trial is ordered.

---

[5] Mass. Adv. Sh. (1975) at 1370.